**SUNBEAM LIGHTING CO. et al. v. SUNBEAM CORPORATION.**

No. 12357.

United States Court of Appeals Ninth Circuit.

June 30, 1950.

As Amended on Denial of Rehearing Sept. 6, 1950.

970

Mitchell & Gold, Milton Mitchell, Seymour Gold, Mason & Graham, Collins Mason and William R. Graham, all of Los Angeles, Cal., for appellant.

Rogers & Woodson, William T. Woodson, Beverly W. Pattishall, Lewis S. Garner, John F. McCanna, all of Chicago, Ill., Lyon & Lyon, Reginald E. Caughey, Los Angeles, Cal., for appellee.

Before BIGGS, and STEPHENS, Circuit Judges, and DRIVER, District Judge.

STEPHENS, Circuit Judge.

The Sunbeam Corporation, an Illinois corporation situated in Chicago, a large and substantial manufacturer of electrically operated household utensils, secured a judgment against the Sunbeam Lighting Co., a California copartnership at Los Angeles, with Marcus Bodian, Herbert L. Krieger and Phil R. Friedman as copartners therein, extensive manufacturers of fluorescent electrical fixtures, in which the individuals mentioned are permanently enjoined from using the name "Sunbeam" in connection with their business. Those enjoined appeal.

The plaintiff assumed the name of Sunbeam Corporation in 1946, having theretofore conducted its business under the name of Chicago Flexible Shaft Company. In 1921 plaintiff took the word Sunbeam as a trade-mark and name for its electric flat irons and thereafter used that name in marketing other household electric utensils. In 1945 it first used that name on furnaces for fusing metals. Some time the name was used by the corporation in connection with heaters as "Stewart Sunbeam". In 1921 the plaintiff applied for the registration of Sunbeam as the trade-mark for "electric flatirons, machines and supplies." It has since applied the mark to many household appliances, sometimes adding the word "Master" after the name. Plaintiff has not entered the lighting field in any manner whatever. Prior to its use by plaintiff, "Sunbeam" had been registered as a trade-mark by others for electric headlights (not including lamps) and for coal furnaces and oil and gas stoves and for automobile heaters and for certain internal combustion engines, cutlery, machinery and tools. In fact, prior to the use of the

trade-mark by the plaintiff, the word "Sunbeam", and many adaptations and combinations of the words "Sun" and "beam" had been and since have been favorite trade-names.

In 1944 defendants adopted the copartnership name and have built up a very substantial business in flourescent electric fixtures exclusively, and by far the most of them are sold for installation through recommendation of lighting engineers and architects and, in a large measure, through competitive tests. It has manufactured fluorescent bed and stand lamps under the name of "Sunlite Master". These constitute less than ½ of 1% of the firm's business.

Plaintiff-appellee in its opening brief makes the following statement:

"The basic issues involved in this appeal are the following:

"1. Does plaintiff have valid registered and common-law rights in the trade-mark Sunbeam?

"2. Does defendants' use of Sunbeam as a trade-mark for electrical appliances— namely fluorescent lamps and fixtures—and as a part of their firm name, result in confusion and likelihood of confusion with the goods and business of the prior user, plaintiff?

"The District Court, after hearing and considering the evidence, answered both of these questions affirmatively, and, in accordance with the Federal Trademark Act, the law of this Circuit and the law of California, enjoined defendants' further use of plaintiff's registered trade-mark, Sunbeam."

From a study of the pleadings, the evidence and authorities, we think the issues are not exactly as plaintiff puts them. The pleadings do not plainly put in issue any question as to common-law rights. However, the trial court very properly directed the trial so as to cover both common-law and registered trade-mark issues. The two rights are not readily separable. It is not questioned but that plaintiff has valid registration and common-law rights in the trade-mark "Sunbeam". The extent of such rights is in issue. As to issue numbered

"2." the case is not solved by the simple finding as to whether defendants' use of the word "Sunbeam" results "in confusion and likelihood of confusion." The answer to that question is material but circumstances not included in the framed statement must be taken into consideration.

Defendants-appellants have added the words "Sunlite Master" to the use of the words "Sunbeam Manufacturing Co., Los Angeles, California," to their portable fluorescent lamps. Portable lamps are sometimes sold as household utensils are sold and plaintiff has extensively used the word "Master" in connection with the word "Sunbeam" upon its products. We think the difference between electrical fluorescent lighting fixtures with the method of their marketing, and portable lamps and the way they are marketed puts the latter on sale in such a way as to cause confusion. The injunction should cover this item. The lamp business is less than ½ of 1% of defendants' business and does not amount to much or anything in effect upon the issues pertaining to the electrical fluorescent fixture business.

Defendants have used in a very limited manner and to a very limited extent, in their trade catalog, a broad black brush-like script print of the name Sunbeam with a streaming capital "S", the upper part of which sweeps over the remaining letters of the word. Laid in direct comparison with the word in script as used by plaintiff one could carry away an impression of similarity although upon analysis there is a marked difference. Plaintiff has copyrighted the word in several modifications of script though each bears similarity to every other. The evidence indicates that the script used by defendants was used later than the copyrights and use by plaintiff. We think the injunction should deny its use by defendants together with other similar scripts by defendants.

We recognize that a non-fanciful word may be used by one business enterprise as its trade-mark and as its tradename in circumstances where its unqualified use by another may constitute infringement or unfair trade. Such principle comes into play in this case as against de-

972

fendants in their use of the script form of the word Sunbeam and in the combination of the words Sunbeam and Master. We think, however, that this item deserves little consideration in relation to the main business of defendants.

It should be understood that defendants do not use the term or word Sunbeam or similar term, except as hereinbefore referred to, in any other manner than as the name of the firm which name "Sunbeam Lighting Company, Los Angeles, Cal." is placed upon the article in full or printed in full on advertising or cataloging the product.

 It appears to us that the facts of this case move us to the area of law accurately and succinctly expressed by the Seventh Circuit in Philco Corp. v. F. & B. Mfg. Co., 1948, 170 F.2d 958 at page 961 as follows: "A distinctive mark or name will be broadly protected as a trade-mark, but general words or names, which have been applied to and used and registered as trade-marks for a large number and variety of products, will be protected only within the range of use on similar goods. Pease v. Scott County Milling Co., D.C.Mo., 5 F.2d 524. The mere fact that one person has adopted and used a trade-mark on his goods does not prevent the adoption and use of the same or a similar trade-mark by others on articles of a different description."

 The trial court's conclusion goes to the extent that, because the plaintiff has a registered and common-law trade-mark of the word "Sunbeam" and use thereof in relation to its actual produce and because of its extensive business, that word is plaintiff's sole property in commerce in the whole broad electrical field. This conclusion extends the restriction on the use of a non-fanciful word far beyond any instance that we are aware of. We are unwilling to affirm the holding that the possibility or the actual proof of an occasional instance of a person's surmise that defendants' print of "Made by Sunbeam Electrical Appliance Co., Los Angeles, California" or similar wording in a catalog or on an electrical fluorescent fixture suggests plaintiff as the manufacturer, and is enough to support the injunction. The law goes to no such extreme.

There is no evidence that either party to the action is in competition in the market. The evidence is conclusively the other way. It is unreasonable to say that a person shopping for a shaver, an egg beater, or a mixer, which is a matter of common shopping in variety and hardware stores, would have occasion to even think of an electric fluorescent light fixture which, as the evidence shows, is ordinarily selected by an architect and installed by an engineer. And no purchaser or selector or installer of the light fixture would have a kitchen labor-saving gadget in mind or if he had, that it would affect his act. If plaintiff's goods are so good that the mere mention of their trade-name or mark would be sufficient for a reasonable person to select an article bearing it, no matter how unrelated plaintiff's goods are to the article, then, as it seems to us, plaintiff must suffer the price of virtue. If, in course of our free enterprise, someone would market an unworthy article outside plaintiff's field bearing the name Sunbeam it must be borne as not an unlikely circumstance following plaintiff's selection of a non-fanciful word popular with commercial concerns.

Lay the instant case alongside our own case of Treager v. Gordon-Allen, Ltd., 9 Cir., 1934, 71 F.2d 766, 767, where it was held that the trade-name of "Par" can legally be used for a machinist's hand soap and the same name can be legally used for laundry soap. The trial court had found quoting from our opinion in the cited case, "Housewives purchasing laundry soap * * * would not know of defendant's product and could not be confused by the use of the same trade-mark", and further on in the opinion: "There is a distinction as to the degree of exclusiveness of appropriation accorded to the originator of a trade-name depending upon the name selected. 'If the name or mark be truly arbitrary, strange, and fanciful, it is more specially and peculiarly significant and suggestive of one man's goods, than when it is frequently used by many and in many differing kinds of business.' France Milling Co. v. Washburn-Crosby Co., 2 Cir., 7 F.2d

304, 306. The line of cases cited by appellant are from cases instituted by originators of some such peculiarly significant name or phrase. The word 'Par' would not come within the class of fanciful or original words. It is a common expression which has come to suggest merit and not any particular business." The cited case deals with two commodities much closer to the same field than the two lines of products in the instant case. Exactly the same may be said as to Palmer v. Gulf Pub. Co., D.C., S.D.Cal., Cent.Div., 1948, 79 F.Supp. 731, authored by the same Judge who tried the instant case. We commend the opinion as a careful study of the broad issues of this case buttressed by many authorities and apt quotations therefrom. Nothing we have said in the Lane Bryant, Inc. v. Maternity Lane, 9 Cir., 1949, 173 F.2d 559, the Stork Restaurant v. Sahati, 9 Cir., 1948, 166 F.2d 348, or the Lerner Stores Corp. v. Lerner, 9 Cir., 1947, 162 F.2d 160 cases is inconsistent with our views herein expressed.

The differentiation of strong and weak marks is well discussed and defined in American Steel Foundries v. Robertson, 1926, 269 U.S. 372, 46 S.Ct. 160, 70 L.Ed. 317; Majestic Mfg. Co. v. Majestic Elect. App. Co., Inc., 6 Cir., 1949, 172 F.2d 862; Dwinell-Wright Co. v. National Fruit Co., 1 Cir., 1944, 140 F.2d 618; and Arrow Distilleries v. Globe Brewing Co., 4 Cir., 1941, 117 F.2d 347, all in appellant's opening brief.

The word sunbeam is not a fanciful term with little use in the English speaking world. Metaphorically, it is a meaningful word, a joyful word, a word of comfort, of light, and of health. A sunbeam is close to the very source of life and necessary to the brighter life. It is a suggestion of good; of motion, of smoothness, of speed, and of noiselessness. These facets to its figurative meaning have spurred the innumerable usages of the word as a short, terse, recognizable, rememberable insignia. A perfect automobile would run speedily, noiselessly, smoothly as a sunbeam, hence there is an English Sunbeam automobile company. So with a lawn mower, an egg beater, or a shaver. A furnace named Sunbeam conjures the good warmth of the sun. But more appropriate than any of these is the application of the word to fluorescent light, the sole subject of defendants' business.

Realizing the continuously expanding use of electrically operated conveniences in the progress of the civilized world, it seems quite unreasonable to hold that the plaintiff company with its well-earned reputation for quality in its line should have the legally enforceable monopoly to this superlative term throughout the whole electrical world. It stretches to the very top of the unreasonable to say that the word "Sunbeam" applied to a household utility machine operated by electricity should be adjudged to bring a stop to its long continued use in the firm name of a successful business enterprise whose business is the manufacture and sale of fixtures for the production of fluorescent light, a light which more closely resembles the light of a sunbeam than any other light yet discovered.

The evidence contains reports of pollers who exhibited a photograph of defendants' partable fluorescent lamp which show that some persons jumped to the conclusion that because it had the word "Sunbeam Lighting Co., Los Angeles" in sight that it was manufactured by plaintiff in Chicago. There was expert testimony to the effect that the plaintiff was a factory of such renown that the mere appearance of the word Sunbeam on large fluorescent fixtures on exhibition to engineers and constructionists meant plaintiff and no other manufacturer, although the article viewed had no resemblance to anything manufactured by plaintiff nor performed any function of the slightest sameness. Psychologists came to the same conclusion. Evidence of this kind is well answered in the Palmer case, supra, 79 F.Supp. at page 734: "The use of ordinary words either alone or in combination, without more, to describe a publication, is not entitled to protection under the law of trade-marks or as unfair competition." See American Auto Ass'n v. American Auto. Owners' Ass'n, 1932, 216 Cal. 125, 13 P.2d 707, 82 A.L.R. 699. The United States Court of Appeals for the District of Columbia said (the pres-

974

ent Chief Justice of the United States speaking) : "A publisher though he has a registered trade-mark cannot be protected from all of the inadequacies of human thought and memory. * * * Probable confusion cannot be shown by pointing out that at some place, at some time, some one made a false identification." McGraw-Hill Publishing Co. v. American Aviation Associates, 1940, 73 App.D.C. 131, 117 F.2d 293, 295. See P. Lorillard Co. v. Peper, 8 Cir., 1898, 86 F. 956, 960; Collegiate World Publ. Co. v. Du Pont Pub. Co., D.C.N.D.Ill.E.D. 1926, 14 F.2d 158, 160.

The judgment is affirmed in so far as it enjoins defendants-appellants from the use of the words "Sunlite Master" and "Master" in association with the word "Sunbeam", and from the use of the word "Sunbeam" by a script resembling or suggestive of the script used by plaintiff-appellee. The judgment is reversed in all other particulars.

Affirmed in part, reversed in part, and remanded.

### Order

The petition for rehearing is denied.