**SUNBEAM CORP. v. SPEAR.**
No. 9807.

United States District Court,
E. D. Pennsylvania.

Feb. 17, 1954.

————◆——— ·

Robert T. McCracken, C. Russell Phillips, Philadelphia, Pa., William T. Woodson, Beverly W. Pattishall, Lewis S. Garner, John F. McCanna, Chicago, Ill., for plaintiff.

Henry N. Paul, Jr., Harry A. Rutenberg, Philadelphia, Pa., for defendant.

GANEY, District Judge.

The action here involved was brought to restrain the defendant from using the registered trade-mark "Sunbeam". Defendant does not contest plaintiff's title to its trade-marks containing that name, nor the validity of those marks, insofar as they are applied to goods of the character made by plaintiff. He claims that the trade-mark "Sunbeam" is a weak mark, and for that reason plaintiff may not prevent him from using the mark in connection with his business or on goods which are not of the kind manufactured, or upon which the mark is actually used by it. In addition he asserts as a defense to the action that no confusion existed between his and plaintiff's goods, and that such goods are non-competing. To resolve these issues, the court, from the evidence presented to it, makes the following special

Findings of Facts.

I Plaintiff

1. Plaintiff, Sunbeam Corporation, is an Illinois corporation. Since 1912 it has continuously engaged in the manufacture and sale of various electrical products. It presently owns and operates a large manufacturing establishment in Chicago; its business is national in scope.

2. Plaintiff has never manufactured lighting fixtures. At one time it made therapeutic lamps, but it has since 1932 ceased making those items and abandoned its trade-mark in connection with them.

3. In 1921, plaintiff, then named the Chicago Flexible Shaft Company, registered the trade-mark "Sunbeam", written in a distinctive script, for electric flatirons. From time to time additional registrations of the trade-mark "Sunbeam" were obtained by it on various household appliances and other tools or utensils, most of which were electrically operated.

4. As the Chicago Flexible Shaft Company developed its "Sunbeam" electrical appliances, it applied in its promotional program the use of other key words used in connection with some of its products. These were "master", such as in Mixmaster, Shavemaster, Ironmaster and Coffeemaster, and "Automatic", which was applied generally.

5. Plaintiff sells its Sunbeam household products through some 1200 wholesalers and more than 100,000 retailers throughout the United States under resale price maintenance contracts. The trade-mark is prominently displayed on each item.

6. The annual volume of business done by plaintiff under the trade-mark "Sunbeam" amounts to many millions of dollars. Since 1921 it has sold over four hundred million dollars worth of products bearing that trade-mark.

7. As the trade-mark became increasingly popular, plaintiff has been very aggressive in its efforts to pre-

empt the mark and prevent other manufacturers in the electrical field from using it on their products. It has bought trade-marks containing the name Sunbeam from others and then permitted the registrations of such marks to expire.

8. At present it annually spends millions of dollars in advertising its products sold under the trade-mark "Sunbeam" through newspapers and prominent magazines of general circulation. Since 1921 it has spent in excess of sixteen million dollars in such advertising. Plaintiff's typical advertising today stresses the words, "Sunbeam", automatic and master. However, it has emphasized the trade-mark "Sunbeam" over the others in all its advertising, sales promotions and displays. In addition, many millions of dollars have been spent by retailers on a local scale in advertising and displaying plaintiff's products bearing the trade-mark "Sunbeam".

9. Plaintiff has been known by the trade and public by the various names Sunbeam, Sunbeam Electric, Sunbeam Company, Sunbeam Manufacturing Company for many years prior to 1946, the year in which it changed its corporate name to Sunbeam Corporation.

10. Plaintiff's products bearing the trade-mark "Sunbeam" are of high quality, excellent style, dependable and of exceptional utility; they are entitled to full public confidence.

11. Plaintiff's products are sold to the general public primarily on the basis of its trade-mark and the reputation for those characteristics mentioned in paragraph 10 above.

II The Trade-mark

1. "Sunbeam", and other similar trade-marks having "Sun" as a prefix, have been registered as trade-marks in the United States Patent Office over 2,000 times since 1890.

2. "Sunbeam" has been registered as a trade-mark 128 times upon a variety of goods including products in lighting and other electrical fields. Not counting plaintiff, "Sunbeam" has been registered by others for lighting and electrical goods twelve times since 1891.

3. Plaintiff has no trade-mark registration of "Sunbeam" in connection with lighting fixtures, either flourescent or incandescent.

4. The word "Sunbeam" is used commonly in connection with business names throughout the United States in the electrical manufacturing and selling field, and many other diversified fields. It has been used in this manner prior to plaintiff's adoption of the word in connection with its business in 1921.

5. The word "Sunbeam" is highly suggestive;[1] it brings to mind such physical phenomena as bright light, warmth and speedy but silent motion. It is therefore particularly well adapted to electric lighting fixtures, and its selection for such use is a natural and appropriate one. As a trade-mark it is not fanciful, unique or distinctive.

6. By plaintiff's persistent efforts and expenditures of large sums of money, the trade-mark "Sunbeam", in connection with household electrical products, has acquired prior to 1945 a distinctiveness or secondary meaning with the trade and public in Pennsylvania and other states as indicating and identifying plaintiff's products or the source where such products originate.

7. Plaintiff has not given defendant its consent to use the trade-mark "Sunbeam". He has never used the words, "master" or "automatic" in connection with any of his products.

III Defendant

1. Defendant, Bernard J. Spear, is a citizen of Pennsylvania. Since October 22, 1945, he has conducted his business under the fictitious names: Sunbeam Electric Co., Sunbeam El. Mfg. Co., Sunbeam Manufacturing Company. The latter name is duly registered according to the laws of Pennsylvania.

1. Sunbeam Lighting Co. v. Sunbeam Corporation, 9 Cir., 1950, 183 F.2d 969, 973.

2. He manufactures and sells fluorescent and incandescent lighting fixtures. He does not make or sell household or other electrical products. At one time he was engaged, to a limited extent, in the manufacture of portable desk and table lamps, but this side line was discontinued by him in 1947, two years prior to the filing of the complaint in the action here involved.

3. His fixtures are of the permanent variety. They are not expensive products and are easy to install once the building in which they are to be placed has been wired for electric lighting fixtures.

4. He sells his products primarily to approximately 800 establishments throughout the country classified as wholesalers. These wholesalers deal principally in lighting fixtures. No control is placed upon such outlets by defendant in their distribution of his products.

5. Defendant's wholesale customers prefer that there be no reference to the manufacturer on the fixtures; they would rather sell lighting fixtures as their own make rather than as branded articles. This is one of the reasons why he places his business designation on his manufactured fixtures by means of a small sticker which may be easily removed. This sticker is not observable when the fixture is affixed to a wall or ceiling. However, the boxes in which the fixtures are packed sometimes bear the name "Sunbeam Electrical Mfg. Co." in large letters.

6. Defendant does not advertise for the benefit of the general public, but only for the wholesale trade by means of the mail, circulars and advertisements in selected trade journals such as "Lighting and Lamps" and "Catalog and Directory of the Lighting and Lamp Industry 1951–1952". Although these magazines are intended for the lighting fixture trade, a small portion of the buying public peruse them. In these advertisements, defendant is designated as the Sunbeam Electric Mfg. Co., and the slogan, "Sunbeam Lights the World", appears.

7. His products are sold primarily on the basis of their style, decorative appearance and low prices.

8. Defendant's products are usually selected and purchased by builders or electrical contractors for installation in newly built or remodeled houses. Occasionally such products are directly purchased and installed by the ultimate consumer.

IV Confusion

1. Trade-marks are used by various manufacturers in connection with the advertisement and sale of lighting fixtures. Many of these products are purchased because of the reputation of such trade-marks.

2. Through the normal channels of trade defendant's lighting fixtures are placed on sale by retail stores in Pennsylvania which handle plaintiff's products and other similar household electrical products. No special effort is made by the retailers to separate or segregate plaintiff's products from those of defendant's when they are placed on view for the buying public.

3. It is common practice in the trade for sales people to show prospective retail customers catalogues and advertising material similar to that sponsored by defendant, so that they may choose from a broad selection of makes and styles.

4. The label on defendant's goods and containers conveys the same impression as the trade-mark on plaintiff's products. The effect of his use of the trade-mark "Sunbeam" as part of his identifying mark in connection with his products creates the likelihood that ordinary purchasers will suppose that such products originate with plaintiff or a concern associated with it or that plaintiff has expanded its business to include this line of goods and purchase them under that impression.

542

5. Defendant's products are of such a character and sold under such circumstances, the likelihood indicated in the preceding paragraph is a reasonable one.

6. Wholesalers and retailers of the particular trade classify plaintiff's products as electrical traffic appliances and those of defendant's as lighting fixtures.

7. Defendant has received many communications, both by telephone and by mail concerning plaintiff's products which were meant for plaintiff.

8. Defendant adopted and continued the use of the mark "Sunbeam" as part of his identifying mark on his fixtures with full knowledge of plaintiff's prior extensive use of that mark and with knowledge of its registration in the United States Patent Office, and that the trade and public associate and identify "Sunbeam" in the household electrical field with plaintiff's products.

V  Competition

1. The parties to the action here involved are not in competition with each other; that is, purchasers are not induced to buy defendant's products instead of plaintiff's.

2. Defendant has never employed the script form of "Sunbeam" with the circular line. "Sunbeam" appeared as part of his identifying mark on a small label applied inside the fixtures.

VI  Discussion

Section 32(1) of the Trade-Mark Act of 1946, 15 U.S.C.A. § 1114(1) provides, in part, as follows: "Any person who shall, in commerce, (a) use, without the consent of the registrant, any reproduction, counterfeit, copy, or colorable imitation of any registered mark in connection with the sale, offering for sale, or advertising of any goods or services on or in connection with which such use *is*

*likely to cause confusion or mistake or to deceive purchasers as to the source of origin of such goods* or services * * shall be liable to a civil action by the registrant for any or all of the remedies hereinafter provided * * *." (Emphasis supplied.)

■ Defendant argues that plaintiff's mark is a weak trade-mark and is, therefore, not entitled to protection beyond the goods on which the mark is actually used or registered. The defendant uses the expression "weak trade-mark" as denoting a mark the protection of which will be afforded to the owner only in the narrow and restricted field in which it has been applied. The doctrine of weak trade-marks appears to have been enunciated in American Steel Foundries v. Robertson, 1926, 269 U.S. 372, 46 S.Ct. 160, 70 L.Ed. 317. Despite the absence of any literal reference to it in the Trade-Mark Act of 1946, as amended, the doctrine still has vitality. See Majestic Mfg. Co. v. Majestic Electrical Appliance Co., Inc., 6 Cir., 1949, 172 F.2d 862; Sunbeam Lighting Co. v. Sunbeam Corporation, 9 Cir., 1950, 183 F.2d 969; Sunbeam Furniture Corp. v. Sunbeam Corporation, 9 Cir., 1951, 191 F.2d 141, 144. In our opinion, however, where the trade-mark has acquired a secondary meaning, as plaintiff's mark undoubtedly has,[2] and the element of confusion is present, it should be afforded some degree of protection, and this protection should not be limited to only those products of plaintiff and to the extent for which the word Sunbeam may be descriptive.

■ Concerning the second issue this court has found that defendant's goods bearing the names "Sunbeam" are likely to cause confusion. Defendant claims that we cannot make this finding because the products manufactured

2. Callmann states: "A weak mark may become a strong mark, apart from the instance where its distinctiveness is attributable to a particular display connected therewith, when the trademark, by dint of labor and expense, acquires a

secondary meaning. The popularity of the mark, of course, is of decisive significance in any appraisal of the likelihood of confusion." 2 Callmann, "Unfair Competition and Trade Mark, § 82.1, p. 1234.

by him are different from those made by plaintiff. We agree that there is a difference—as indicated by our finding that the goods of the parties are noncompeting. But the existence of a difference between goods or the absence of direct competition is not always controlling in determining whether a plaintiff should be denied relief. A confusion as to business identity and source of origin is also recognized by the law.[3]

██ In the instant action, the parties' products are so related and sold in a common market under such conditions that purchasers were and still are likely to be deceived either into the belief that defendant's products were made by plaintiff or that there was some connection between the manufacturers.[4] The fact that people in the trade classify plaintiff's products as electrical traffic appliances and defendant's goods as lighting fixtures and they were not deceived into believing that all the products in question bearing the name "Sunbeam" originated from the same source is of no significance here. All that is necessary is the existence of the reasonable likelihood that the public will be confused. Nor is it reason enough to deny protection because the goods are noncompeting. Wall v. Rolls-Royce of America, 3 Cir., 1925, 4 F.2d 333; Vogue Co. v. Thompson-Hudson Co., 6 Cir., 1924, 300 F. 509; Telechron, Inc., v. Telicon Corporation, 3 Cir., 1952, 198 F.2d 903; 2 Callmann, Unfair Competition and Trade-Marks, § 84.2(a).

It would appear at first blush that the depriving of defendant of the use of the trade-mark "Sunbeam" in connection with his products would be a severe blow to his business. But this we believe will not be the case. He has admitted that most of his customers prefer that his identifying label be omitted from his goods. In those instances when his identifying label was attached, it could easily be removed at the wish of the wholesaler or retailer. Moreover, on a number of occasions he has shipped his goods in boxes bearing no manufacturer's identifying mark.

### Conclusions of Law.

1. This court has jurisdiction over the subject matter and the parties to this action.

2. The use by defendant of the trade-mark "Sunbeam" in connection with the sale of his lighting fixtures and advertising therewith constitutes an infringement of such mark and unfair competition.

3. Plaintiff is entitled to a judgment enjoining the defendant, his agents, servants, successors and assigns from using the trade-mark "Sunbeam" in connection with the sale of his lighting fixtures and the advertising of such fixtures.

4. Plaintiff is not entitled to a judgment requiring the defendant to account for all profits realized by him by reason of his use of the trade-mark "Sunbeam".

Accordingly, the plaintiff may prepare and submit an order for judgment in accordance with the foregoing findings and conclusions of law.

### Final Judgment.

This action having been before this Court, tried, argued, and submitted, and upon consideration of the evidence adduced by the parties, and the Court having filed an opinion and having entered Findings of Fact and Conclusions of Law, and in accordance therewith it is hereby Ordered, Adjudged and Decreed as follows:

1. That the defendant, his agents, attorneys, servants, employees, privies, successors, and assigns, and all holding by, through, or under him, be and the

3. See 2 Callmann, Unfair Competition and Trade Mark, §§ 80.1, 80.2.

4. Contra: Sunbeam Lighting Co. v. Sunbeam Corporation, 9 Cir., 1950, 183 F. 2d 969, 972.

same are hereby perpetually enjoined and restrained from:

(a) Using the word Sunbeam, or any colorable imitation thereof, as a trademark, brand name, corporate name, business style, or as a part thereof, in connection with the production, sale, or advertising of lighting fixtures, lamps, or household electrical products.

2. No accounting is decreed.

3. That the plaintiff shall have and recover from the defendant the costs of this action.