**SEARS, ROEBUCK AND CO., a New York corporation,**

v.

**ALLSTATES TRAILER RENTAL, INC., a Maryland corporation.**

Civ. No. 11333.

United States District Court
D. Maryland.
Oct. 17, 1960.

Robert F. Skutch, Jr., Weinberg & Green, Baltimore, Md.; Frank H. Marks, Lederer, Livingston, Kahn & Adsit, Chicago, Ill., for plaintiff.

David Gerber, Burke, Gerber & Wilen, Baltimore, Md., and Albert J. Kramer and William T. Stephens, Washington, D. C., for defendant.

THOMSEN, Chief Judge.

Plaintiff, which sells auto trailers and other automotive parts and accessories under its registered trade-mark "Allstate" and operates automotive service stations using that name, seeks to restrain defendant from (1) renting auto trailers bearing the word "Allstates", (2) from using that word as the trade name of its trailer rental business and as part of its corporate title, and (3) from using the word "Nationwide" imposed over an outline map of the United States on its trailers and in its advertising.

### Facts

The case has been submitted on a stipulation of facts, which includes a great variety of exhibits and the deposition of defendant's president.

Plaintiff is a New York corporation with its principal place of business in Chicago, Illinois. It has been engaged in retail trade since 1886 and is one of the largest retail distributors of consumers' merchandise in the United States. Plaintiff operates eleven mail-order plants, serving as merchandise distribution centers for all sections of the United States, including the State of Maryland and the City of Baltimore. For many years plaintiff has distributed semi-annually in this and other countries millions of copies of a large general catalogue. The 1959 Fall distribution exceeded 9,000,000 copies at a cost in excess of $15,000,000. More than 100,000 copies of the Spring catalogues have been distributed in Baltimore and more than 1,000,000 copies in Maryland during the period 1954–1960. All of the catalogues include automotive equipment sold under plaintiff's trade-mark "Allstate".

Since November 1926 plaintiff has continuously used and advertised the trade-mark "Allstate" in connection with certain goods which it sells. The "Allstate" trade-mark now covers a line of automotive parts and accessories.

Since 1925 plaintiff has operated retail stores throughout the United States, and now operates over 700 such stores, including several in and around the City of Baltimore, and elsewhere in Maryland. Plaintiff also operates about 650 automobile service stations in connection with its retail stores, including those in Baltimore. Those service stations sell plaintiff's "Allstate" merchandise and display the name "Allstate" in various ways, e. g.

"Allstate
Tires  Batteries  Oil  Lubrication
& Accessories"

on the face of the station.

Plaintiff's Division 28 handles automotive parts and supplies other than tires and tubes. For the period 1945 to 1959, sales of Division 28 alone amounted to approximately $1.5 billion, with an advertising expense of over $46 million. The sales and advertising figures for tires are also very substantial. During the years 1950–1959 the cost of advertising "Allstate" products in Maryland has steadily increased from about $25,000 per year to about $50,000 per year; sales of such products have increased from less than $800,000 to more than $1,600,000. Plaintiff's "Allstate" line is advertised not only in plaintiff's catalogues, but also in local newspapers in Baltimore City and elsewhere. The word "Allstate" on the products and in the advertising is frequently displayed superimposed over an outline map of the United States.

In 1927 plaintiff registered its trade-mark "Allstate" for tires and tubes. In 1954 it registered on the Principal Register its trade-mark "Allstate" for a wide line of automotive and motor vehicle structural parts and accessories showing that the mark was first used for that category of merchandise on or about January 17, 1933. The list of products covered by the registration included utility trailers. Plaintiff has sold and advertised trailers under the trade-mark "All-

state" in Maryland and elsewhere since about January 1943. In the ten years since 1950 plaintiff has sold over 50,000 "Allstate" trailers.

Allstate Insurance Co., a subsidiary of plaintiff, has registered "Allstate" on the Principal Register as a service mark for underwriting of insurance risks.

Defendant is a Maryland corporation with its principal place of business at 6501 Pulaski Highway, in Baltimore. It was incorporated under its present name in January 1955 and since that time has engaged in the business of leasing automotive trailers to the public from its Pulaski Highway service station and through other service stations in Maryland. Since 1955 the trailers have borne defendant's trade name "Allstates". Defendant also uses the name "Allstates" on its stationery in printed leases and in telephone directory advertising. A predecessor partnership, known as Bennett's of Baltimore, was engaged in the business of leasing trailers, but it did not use the name "Allstates".

Defendant owns between 112 and 121 trailers. It now leases about 22 to 24 trailers to Nationwide Trailer Rental Systems, Inc., a system for exchanging trailers after one-way trips. These trailers are marked with the name "Nationwide" superimposed on an outline map of the United States. These trailers are generally used in interstate operations, while the trailers marked "Allstates" are generally used in and around Baltimore. Defendant's advertisements and telephone directory listings show that it is a member of the Nationwide Trailer Rental System.

No person, firm or corporation in the State of Maryland other than plaintiff is using the name "Allstate" or "Allstates" in connection with the sale of automotive parts and equipment, including auto trailers. No person, firm or corporation in the State of Maryland other than defendant is using the name "Allstate" or "Allstates" in connection with the leasing of auto trailers.

About the time of the opening of plaintiff's Mondawmin, Baltimore store in No-vember 1956, Kershner, an assistant to the operating superintendent of that store, acting within the general scope of his authority, arranged for the leasing of a number of defendant's "Allstates" trailers for use at the Mondawmin store to facilitate the delivery of merchandise to plaintiff's customers during the pre-Christmas season, because sufficient regular facilities had not yet been developed for the delivery of such merchandise. After a period of several weeks, the trailers were returned to defendant's place of business and payment therefor in the amount of $142.50 was duly made by plaintiff's check. Subsequently, Kershner again arranged with defendant for the leasing of a number of trailers on similar terms and arrangements; payment for that leasing was made by plaintiff to defendant on or about June 17, 1957, in the amount of $61.27.

On or about July 23, 1957, defendant filed in the United States Patent Office an application to register the trade-mark "Allstates" for the leasing of vehicular trailers; that application was allowed for publication and was published for opposition in the Official Gazette of the Patent Office on November 4, 1958. Plaintiff has opposed such registration by an opposition proceeding in the Patent Office. That proceeding is now in suspension pending the outcome of this suit.

On or about November 28, 1958, counsel for plaintiff sent defendant a written demand that defendant cease using the trade style "Allstates".

The complaint in the instant action was filed on April 17, 1959. It seeks (A) an injunction against defendant's use of any trade name or style including the word "Allstates" in any form, or any other word confusingly similar to "Allstate"; (B) the destruction of all printed material, signs, and the like bearing the word "Allstates"; (C) the elimination of that word from defendant's corporate name; (D) an accounting of damages and profits; (E) a direction to the Commissioner of Patents to enter a final judgment in the opposition proceeding

sustaining plaintiff's opposition and denying the registration applied for; and (F) for other and further relief. Plaintiff has now abandoned its claim for damages and profits.

In addition to the stipulated facts set out above, the deposition of Charles W. Benson, defendant's president, shows that when he organized the defendant corporation under its present name he was aware that plaintiff used the trademark "Allstate" in connection with the sale of many items, including trailers, and that plaintiff operated service stations in the Baltimore area and used the name "Allstate" on those stations. The deposition also included the following questions (by plaintiff's counsel) and answers:

"Q. Mr. Benson, has it ever occurred to you when a customer comes in to rent a trailer that they have asked you whether or not you are affiliated with Sears Roebuck and Company or whether you have any tie-up with Sears Roebuck and Company, or whether any of your trailers were Sears Roebuck trailers?

"A. In the past month I have had two people ask that.

"Q. Did it ever happen before that?

"A. I don't recall it happening before that."

Plaintiff contends that this evidence proves actual confusion. I am not satisfied that the two prospective customers who asked the question were not inspired by plaintiff, and I do not find this testimony persuasive to prove actual confusion. For reasons discussed below, however, I do find that there is a strong likelihood of confusion in the minds of the trailer-using public; that many people who are familiar with plaintiff's use of the word "Allstate" in connection with various automotive products and services would be likely to believe that a trailer rental concern using the name "Allstate" or "Allstates" is operated by or associated with plaintiff.

### Discussion

Plaintiff asserts rights in this case both under the common law and under the Lanham Act.[1] For the purposes of this case the Maryland law and the Federal law are similar.

As this court noted in Chayt v. Darling Retail Shops Corp., D.C.Md., 175 F.Supp. 462, 468, both the Court of Appeals of Maryland and the Fourth Circuit generally apply the principles with respect to "Confusion of Source" set out in the A.L.I.Restatement, Torts, vol. 3., ch. 35, sec. 711, et seq. National Shoe Stores Co. v. National Shoes of New York, 213 Md. 328, 131 A.2d 909; A. & H. Transportation, Inc. v. Save Way Stations, Inc., 214 Md. 325, 135 A.2d 289; Little Tavern Shops v. Davis, 4 Cir., 116 F.2d 903, a Maryland case, opinion by Judge Soper The important sections of the Restatement for this case are 715, 716, 717, together with Comments a and b, 728 and Comments a and c, 729, 730 and 731.

Sec. 717 states the conditions under which one infringes a trade-mark or trade name so as to be subject to liability.[2]

1. Sec. 32(1) of the Lanham Act, 15 U.S. C.A. § 1114(1), provides in pertinent part: "Any person who shall, in commerce, (a) use, without the consent of the registrant, any reproduction, counterfeit, copy, or colorable imitation of any registered mark in connection with the sale, offering for sale, or advertising of any goods or services on or in connection with which such use is likely to cause confusion or mistake or to deceive purchasers as to the source of origin of such goods or services; or (b) reproduce, counterfeit, copy, or colorably imitate any such mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles, or advertisements intended to be used upon or in connection with the sale in commerce of such goods or services, shall be liable to a civil action by the registrant for any or all of the remedies hereinafter provided * * *."

2. A.L.I. Restatement, Torts, sec. 717 states:
"General Statement Of Conditions Of Infringement.

Sec. 728 states: "A designation is confusingly similar to a trade-mark or trade name under the rule stated in sec. 717 if prospective purchasers are likely to regard it as indicating the source identified by the trade-mark or trade name." Sec. 729 sets out the factors to be considered in determining whether the marks or names are confusingly similar.[3]

(a) The words "Allstate" and "Allstates" are almost identical in appearance, pronunciation and suggestion. Plaintiff often superimposes its trade-mark "Allstate" on a map of the United States; defendant often uses its name "Allstates" in association with the word "Nationwide" superimposed on a map of the United States. (b) Defendant denies that it adopted the name "Allstates" to obtain the benefit of plaintiff's good will, but defendant's president knew of plaintiff's use of "Allstate" when he adopted defendant's name. He probably had several reasons for adopting the name, including the geographical nature of the word "Allstates" and the fact that it begins with "A", thus entitling defendant to priority of listing in the yellow pages of the telephone directory. I am not satisfied that the advertising of "Allstate" by plaintiff was not a factor. (c)

Plaintiff sells "Allstate" merchandise, including trailers, by mail, in its retail stores and in the service stations attached to those stores, and furnishes various services in those service stations. Defendant leases its trailers through service stations. (d) It is unlikely that persons considering the purchase or rental of trailers will exercise a high degree of care in receiving and sorting impressions as to the source of the trailers offered for sale or lease. I conclude that an appreciable number of prospective users of trailers are likely to associate defendant's trailers and business with plaintiff's business.

In Sears, Roebuck & Co. v. Johnson d/b/a All-State School of Driving, 3 Cir., 219 F.2d 590, 593, the court said:

"Defendants emphasize the point that plaintiff does not provide the same services they do, and therefore there could be no confusion. The fact that two parties market the same goods or services and are in direct competition with each other is important. But the absence of these factors is not conclusive. Restatement, Torts, § 730 (1938); Bond Stores, Inc. v. Bond Stores, Inc., 3 Cir., 1939, 104 F.2d 124; Duro Co.

"(1) One infringes another's trade name, if

"(a) without a privilege to do so, he uses in his business, in the manner of a trade-mark or trade name, a designation which is identical with or confusingly similar to the other's trade name, though he does not use the designation for the purpose of deception, and

"(b) the other's interest in his trade name is protected with reference to

"(i) the goods, services or business in connection with which the actor uses his designation, and

"(ii) the markets in which the actor uses his designation.

"(2) One infringes another's trade-mark if

"(a) as applied to the other's trade-mark, the conditions stated in Subsection (1) are satisfied, and

"(b) the other's use by affixation of his trade-mark is prior to such use by the actor of his designation, and

"(c) the other's trade-mark is not a clear likeness of a third person's prior

and subsisting trade-mark or trade name in substantially the same market for the same or clearly related goods."

3. A.L.I. Restatement, Torts, sec. 729 states:

"Factors In Confusing Similarity.

"In determining whether the actor's designation is confusingly similar to the other's trade-mark or trade name, the following factors are important:

"(a) the degree of similarity between the designation and the trade-mark or trade name in

"(i) appearance;

"(ii) pronunciation of the words used;

"(iii) verbal translation of the pictures of designs involved;

"(iv) suggestion;

"(b) the intent of the actor in adopting the designation;

"(c) the relation in use and manner of marketing between the goods or services marketed by the actor and those marketed by the other;

"(d) the degree of care likely to be exercised by purchasers."

v. Duro Co., 3 Cir., 1928, 27 F.2d 399.

"When we consider that all of the services of plaintiff rendered under the Allstate label relate to automobiles, as do defendants' services, that plaintiff, through its financial grants and insurance discounts, is closely associated with the field of driving instruction, and that the services of plaintiff and defendants have the same prospective common purchasers, we think there is sufficient probability that confusion will result in the public's mind. Nor do we think the types of services involved are such that the public is likely through its own due care to ascertain the different sources of the driving instruction and other automotive services."

■ There was evidence in that case of a consumer survey, and no such evidence in the case at bar. I reject plaintiff's argument that in deciding this case this court may consider facts proved in another case but not proved in this case. However, the legal principles relied on in the Third Circuit case apply also in the case at bar.

It is true that other concerns, not connected with plaintiff, have registered "Allstate" as a trade-mark for various types of goods, including welding alloys, lubricating oils, whiskey, fresh vegetables, watches, writing paper and Babbitt bearings. Allstate Auto Recovery Service, Allstate Freight, Inc., Allstate Homeowners Asso., Inc., Allstate Insurance Companies and Allstate T.V. Service, as well as defendant Allstates Trailer Rental Corp., are listed in the Baltimore telephone directory. It is also true that the greater the number of similar trademarks or trade names already in use, the less the likelihood that their products will be attributed to one source. However, the insurance companies are subsidiaries of plaintiff, and the nature and extent of the businesses of the other companies listed in the telephone directory have not been shown. As the Second Circuit held in Admiral Corp. v. Penco, Inc., 203 F.2d 517, 521, "these are mere third-party uses, perhaps substantially or wholly wrongful and inadequate to justify defendant's wrongful use. Ward Baking Co. v. Potter-Wrightington, 1 Cir., 298 F. 398, 402; Bond Stores, Inc. v. Bond Stores, Inc., 3 Cir., 104 F.2d 124, 125." See also Safeway Stores, Inc. v. Rudner, 9 Cir., 246 F.2d 826, 828.

Sec. 730 of the Restatement, headed "Limitation of Protection with Reference to Kind of Goods, Services or Business", states: "The interest in a trade-mark or trade name is protected under the rule stated in sec. 717 with reference only to (a) competing goods, services or businesses, and (b) other goods, services or businesses which, in view of the designation used by the actor, are likely to be regarded by prospective purchasers as associated with the source identified by the trade-mark or trade name."

■ The goods, services and businesses of plaintiff and defendant do compete to some extent, in that a prospective user of a trailer must choose whether he will buy or rent a trailer. But direct competition is not necessary to entitle plaintiff to relief in such a case as this. Sears Roebuck & Co. v. Johnson, supra; Safeway Stores, Inc. v. Rudner, 9 Cir., 246 F.2d 826; North American Aircoach Systems, Inc. v. North American Aviation, Inc., 9 Cir., 231 F.2d 205; Vogue Co. v. Thompson-Hudson Co., 6 Cir., 300 F. 509.

■ Sec. 731 of the Restatement deals with the factors to be considered on the question whether plaintiff's interest in its trade-mark and trade name is protected with reference to the services and business in connection with which defendant uses its designation.[4]    (a) As

4. A.L.I. Restatement, Torts, sec. 731 states:
"Factors In Limitation Of Protection With Reference To Kind Of Goods, Services Or Business.

"In determining whether one's interest in a trade-mark or trade name is protected, under the rules stated in §§ 717 and 730, with reference to the goods, services or business in connection with

we have seen, there is a strong likelihood that prospective users of trailers will believe that a trailer rental concern using the name "Allstates" is operated by or associated with plaintiff. (b) There is no evidence whether or not plaintiff may expand its business to include the rental of trailers, but there is some competition between the businesses, and (c) and (e) a prospective user may elect to buy or to lease a trailer. (d) Some of plaintiff's "Allstate" merchandise is sold through service stations and it renders certain automotive services in such stations. Defendant's trailers are generally leased through service stations.

(f) The word "Allstate" does not have a high degree of distinctiveness. Arrow Distilleries v. Globe Brewing Co., 4 Cir., 117 F.2d 347; Dixi-Cola Laboratories, Inc., et al. v. Coca Cola Co., 4 Cir., 117 F.2d 352; Ambrosia Chocolate Co. v. Ambrosia Cake Bakery, Inc., 4 Cir., 165 F.2d 693. It is descriptive, like "National", but has acquired a secondary meaning in the automotive field, as the name of the goods and services furnished by plaintiff. See Restatement, sec. 716, comments a and b. National Shoe Stores Co. v. National Shoes of New York, supra. "Allstate" is a weak mark, but the classification into strong and weak marks is not determinative of the basic question of likelihood of confusion of origin. Several recent cases under the Lanham Act have considered the reputation the plaintiff has built around his mark, even though the mark is weak, as being determinative of the question of likelihood of confusion. Admiral Corp. v. Penco,

Inc., 2 Cir., 203 F.2d 517; Sunbeam Corp. v. Spear, D.C.E.D.Pa., 120 F.Supp. 538; Pure Foods, Inc. v. Minute Maid Corp., 5 Cir., 214 F.2d 792; Developments in the Law—Trade-Marks and Unfair Competition, 68 Harv.L.Rev. 814, 848–49. (g) There is no evidence on the question of the degree of attention usually given to trade symbols in the purchase of goods and services offered by plaintiff and defendant respectively, but the good will involved in plaintiff's trademark "Allstate" is obvious. Defendant relies heavily on the good will of the Nationwide Trailer Rental System.

(h) Plaintiff has used the name "Allstate" for 35 years. Defendant began to use it in 1955, three or four years before plaintiff objected and four years before this action. (i) Defendant's intent in adopting the name "Allstates" has been discussed above. It is significant that defendant has not shown that it has spent any considerable sum in advertising its name, whereas plaintiff has spent a very large amount in advertising "Allstate". The fact that plaintiff is big and defendant is little does not help plaintiff; but the amount spent on developing its trade-mark and the failure of defendant to prove what it has spent or to prove the value, if any, of the name to it, are factors to be considered.

Weighing all the factors in the light of the applicable legal principles, I conclude that plaintiff is entitled to enjoin defendant's use of the word "Allstates", or any other word confusingly similar to "Allstate", in its trailer rental business.

which the actor uses his designation, the following factors are important:

"(a) the likelihood that the actor's goods, services or business will be mistaken for those of the other;

"(b) the likelihood that the other may expand his business so as to compete with the actor;

"(c) the extent to which the goods or services of the actor and those of the other have common purchasers or users;

"(d) the extent to which the goods or services of the actor and those of the other are marketed through the same channels;

"(e) the relation between the functions of the goods or services of the actor and those of the other;

"(f) the degree of distinctiveness of the trade-mark or trade name;

"(g) the degree of attention usually given to trade symbols in the purchase of goods or services of the actor and those of the other;

"(h) the length of time during which the actor has used the designation.

"(i) the intent of the actor in adopting and using the designation."

■ I have considered the fact that after first refusing to register defendant's mark, citing plaintiff's registrations, the Commissioner caused the mark to be published in the Official Gazette of the Patent Office, presumably after an ex parte finding that defendant was entitled to registration, based upon defendant's statement that "the business of Sears, Roebuck under these trade-marks is wholly non-competitive with and unrelated to the *services* rendered by applicant." Although such a decision should be accorded some weight, it must be remembered that the decision was not a final decision of the Patent Office—the examiner's decision was subject to opposition under sec. 1063—and that the court does not have the benefit of an opinion by the examiner setting forth his reasons for reaching that decision.

■ Defendant argues that the lease of defendant's trailers by plaintiff for its Mondawmin store in 1956 and 1957, and the payments of $142.50 and $61.27 therefor, amount to acquiescence by plaintiff in defendant's use of the mark and that there has been laches on the part of plaintiff in bringing this action. The leasing of the trailers was within the authority of the assistant to the operating superintendent of the Mondawmin store, but it is not shown that anyone higher in plaintiff's organization knew about the name of the lessor or the legend on the trailers.

These facts do not amount to such acquiescence or laches as would require a court of equity to deny plaintiff an injunction protecting the good will which plaintiff has built up over many years in its trade-mark "Allstate". Plaintiff is not pressing any claim for damages or profits. As the court said in Stork Restaurant v. Sahati, 9 Cir., 166 F.2d 348:

"The appellant is not here seeking to have the appellees mulcted in damages, nor is it striving to drive them out of business. It asks merely that its adversaries be compelled to desist from an unfair trade practice that threatens to 'nibble away', 'whittle away', or 'dilute' the value of its dearly-bought prestige.

"The appellant begs that the appellees, with an 'infinity' of other names to choose from, divest themselves of plumage borrowed from the Stork.

"In a word, the appellant is making a plea peculiarly calculated to move the conscience of a chancellor. It prays not for a sword, but for a shield." 166 F.2d at page 364.

■ Defendant has not shown that it has invested any considerable sum in advertising or otherwise establishing any good will in its name "Allstates" during the period 1956 to 1959 or, for that matter, from 1955 to date. But however little defendant may have spent, plaintiff's delay in bringing suit has permitted defendant's business to become known by that name. It is only fair that defendant be permitted, for a reasonable time after it has adopted a new name, to show on its stationery and in its advertising and telephone directory listings, that it is continuing the business heretofore known as Allstates Trailer Rental, Inc. Two years would appear to be a reasonable period of time during which such showing might be made.

There is no merit in plaintiff's effort to prevent defendant from using the word "Nationwide" in connection with its business. Plaintiff has no interest in the trade-mark or trade name "Nationwide", standing alone or superimposed on an outline map of the United States.

Counsel will prepare an appropriate decree.