The DUROX COMPANY, Appellee,

v.

DURON PAINT MANUFACTURING COMPANY, Inc., Appellant.

No. 8875.

United States Court of Appeals Fourth Circuit.

Argued March 26, 1963.

Decided June 29, 1963.

See also D.C., 193 F.Supp. 829.

Francis C. Browne, Washington, D. C. (William E. Schuyler, Jr., Andrew B. Beveridge, Joseph A. DeGrandi, and Browne, Schuyler & Beveridge, Washington, D. C., on the brief), for appellant.

Bruce B. Krost, Cleveland, Ohio (Robert R. Bair, Baltimore, Md., Woodling, Krost, Granger & Rust, Cleveland, Ohio, and Venable, Baetjer & Howard, Baltimore, Md., on the brief), for appellee.

Before HAYNSWORTH and J. SPENCER BELL, Circuit Judges, and PREYER, District Judge.

PREYER, District Judge.

Plaintiff's complaint under 15 U.S.C.A. § 1071 and 35 U.S.C.A. § 146 asked the district court to reverse a decision of the Patent Office Trademark Trial and Appeal Board and to direct the Commissioner of Patents to issue to plaintiff its requested registration of DUROX for "a liquid primer sealer surface coating which may also be used as an additive for paints, enamels and lacquers." The district court found for Durox on its complaint to the extent of a more limited description of its goods than as described in its application in the Patent Office, stating that Durox is "entitled to the more limited registration of DUROX requested at the end of the case, namely, for a 'liquid chemical composition for use as an additive for automotive paints, enamels, and lacquers.'" Defendant Duron on appeal denies the district court's authority to modify the findings of the Patent Office in this manner, contending that the district court is limited to affirming or reversing the Patent Office. Defendant Duron also objects to the dismissal of its counterclaim for an injunction restraining plaintiff's use of the mark DUROX.

### Defendant's Counterclaim For Infringement

Defendant Duron successfully opposed the registration before the Board on the ground that plaintiff's mark DUROX so nearly resembles defendant's mark DURON as to be likely to cause confusion. The trial in the district court being de novo, there was received in evidence a number of exhibits and considerable testimony over and above that found in the record of the Patent Office. The district court found the facts substantially as follows.

Plaintiff is a distributor of specialty automotive products, which it sells nationally through automotive specialty jobbers, principally to auto body shops, which repair and refinish motor vehicles.

Defendant manufactures a line of paint and paint products, including various additives, which are sold to the general public principally through paint stores and the paint departments of general stores. Defendant's products are sold along the Eastern Seaboard from Massachusetts to South Carolina. They are not sold west of the Appalachians.

Few of the products sold by plaintiff are similar to any products sold by defendant. The only two which have any considerable sale are DUROX S-88, an additive for enamel to improve bond, gloss, flow and drying time, and DUROX L-98, an additive for converting lacquer to semi-enamel. It is primarily for these two products that plaintiff seeks the proposed registration. Although these two additives could be mixed with paints used for various purposes, they are not advertised or sold except to the automotive specialty trade.

Very few dealers sell both (1) automotive paints and (2) house paints and other paints for use by the general public. The evidence disclosed only two related companies in Norfolk and Richmond.[1] Companies such as DuPont, Sherwin-Williams, Pittsburgh Plate Glass and Glidden, which manufacture both automotive and general paints, usually sell the two lines through different channels, often with different trade names. Auto body shops ordinarily purchase paint, as well as other products, from automotive supply houses. The proprietors of such shops are knowledgeable buyers; they are not likely to believe

that all of the paints or other products sold under marks beginning with DUR or DURO have a common origin, or that either party to this case is sponsoring the other's product.

No instance of actual confusion of source or any other confusion between plaintiff's and defendant's products has been proved or claimed.

Both DUROX and DURON are weak marks. The first Syllable of each is suggestive and has been used as the first syllable of hundreds of marks, many of them in Class 16, Protective and Decorative Coatings, the class here involved.

■ The court below, after finding the above facts, found that there is no likelihood of confusion between the marks of the parties as being presently used in the trade on their respective products and thereupon dismissed defendant's counterclaim for infringement. This finding is binding upon this court unless shown to be clearly erroneous. Nichols v. Minnesota Mining & Mfg. Co., 109 F.2d 162, CCA4–1940; American Foods, Inc. v. Golden Flake, Inc., 312 F.2d 619, CCA5–1963; and see Sureline Mfg. Co. v. Marzall, 105 F.Supp. 247, Dis.Ct.D.C.– 1951.

■ Infringement is based on the existence of similarity such as would likely cause confusion of any appreciable number of ordinary prudent purchasers as to the source of origin of the goods.[2] Defendant does not challenge this general rule nor does defendant seriously contend that there is not evidence to support the district court's findings of fact as facts. But defendant argues that the district court committed legal error in the criteria applied in determining whether

---

1. These two supply houses under common ownership had two separate departments, one for general house paints and another for automotive finishes. No instances of actual confusion at these locations were shown. These two stores do not sell any Duron products in their departments for automotive paints: The two stores sell the Duron line in their house paint departments and the DuPont line in their

automotive paint departments. There has been no confusion between the latter two names.

2. The statutory test is whether "such use is likely to cause confusion or mistake or to deceive purchasers as to the source of origin of such goods or services." Lanham Trade-Mark Act, § 32, 15 U.S.C.A. § 1114.

there was likelihood of confusion as to source of origin. Specifically, defendant objects that the district court distinguished between the products of the parties on the basis of (1) the channels of trade and (2) end uses of the products. Defendant's position is that the use to which goods are put or the channels of trade or classes of purchasers are not determinative of source of origin.

■■■ Defendant's position finds support in Esso Standard Oil Co. v. Sun Oil Co., 97 U.S.App.D.C. 154, 229 F.2d 37, cert. den. 351 U.S. 973, 76 S.Ct. 1027, 100 L.Ed. 1491. But the majority of courts have not followed the narrow rule applied in the District of Columbia. The weight of authority is that likelihood of confusion is a question of fact and in arriving at a conclusion all relevant factors should be considered in an over-all perspective. While the determination is not based on the "equities," it is based on balancing the conflicting interests both parties have in the unimpaired continuation of their trade-mark use.[3] Avon Shoe Co. v. David Crystal, Inc., 279 F.2d 607, Cir. 2 (1960). We think the trial court was correct in taking into consideration the weak nature of the marks involved, the specific differences in the goods of the parties, the different marketing channels through which the respective goods moved, the difference in customers (whether the goods have common purchasers or not) and the type of persons who purchase the goods (whether sophisticated and knowledgeable). Drexel En-

terprises, Inc. v. Richardson, 10th Cir., 312 F.2d 525 (1962); Sears Roebuck & Co. v. Johnson, 3 Cir., 219 F.2d 590 (1955); Miles Shoes, Inc. v. R. H. Macy & Co., Inc., 2 Cir., 199 F.2d 602, 603 (1952); Sears Roebuck & Co. v. Allstates Trailer Rental, Inc., 188 F.Supp. 170 (D.C.Md.1960). Fairway Foods Inc. v. Fairway Markets, Inc., 227 F.2d 193, 9th Cir. (1955); American Law Institute Restatement of Torts, § 729. The district court properly concluded that there is no likelihood of confusion as to the source of origin of the goods.[4]

### Power Of The Court To Modify The Patent Office Decree

The district court found that "there is little or no likelihood of confusion so long as plaintiff's and defendant's products are distributed through different channels, as they are at present," but concluded that "[t]here might be some confusion if plaintiff's additives as presently labeled were offered for sale from the shelves of paint stores or general stores." The district court therefore held that plaintiff was entitled to registration of DUROX only in the more limited form of a "liquid chemical composition for use as an additive for *automotive* paints, enamels, and lacquers" (emphasis supplied). The court thereupon dismissed the complaint without prejudice to plaintiff's right to apply for such registration.[5] The court further directed that so long as plaintiff sells under the DUROX mark it should either (a) re-

3. Thus, it may not be relevant that defendant filed its opposition to registration of plaintiff's mark after seeing the name in a trade publication rather than on the basis of any actual confusion; nor do we think it relevant that Duron made certain representations to the Patent Office to secure the registration of its mark disclaiming any broad scope for the mark, and which representations plaintiff contends defendant has contradicted in its pleadings and evidence in the present case. These are matters of the equities.

4. There is authority that there may not be infringement even where likelihood of confusion is found. Avon Shoe Co. v. David

Crystal, Inc., supra. We need not reach that question in the present case.

5. The Patent Office, since receiving the judgment of the district court, has indicated that it will issue a registration to Durox in accordance with the court's opinion. The Patent Office has indicated further that as a matter of administrative practice within the Patent Office it will place this registration in Class 16. (Patent Office letter of October 30, 1962, to Durox attorneys, cited in Durox brief.) Duron objects to the registration of the mark in class 16. We think it should be left to the Patent Office to determine as an administrative matter the appropriate classification for such registration.

frain from selling directly or indirectly to or through stores which sell house paints or other paints for use by the general public, or (b) modify its labels on DUROX L-98, DUROX S-88, and any similar or other paint products now or hereafter sold, to show that they are being offered only for use in painting motor vehicles.

Defendant strenuously contends that the district court lacked the statutory power to modify the decision of the Patent Office in this manner, contending that 35 U.S.C. § 145 and 35 U.S.C. § 146 are controlling. These sections provide that the adjudication of the District Court merely "authorizes" the Commissioner to issue the patent or trademark registration "on compliance with the requirements of law."[6] Defendant points out that 35 U.S.C. § 144, dealing with the alternative route of appeal from the Patent Office to the United States Court of Customs and Patent Appeals, provides that the latter court's determination "governs further proceeding" in the case,[7] indicating a statutory purpose to limit the jurisdiction of the District Court solely to the application which was before the Patent Office.

Assuming arguendo that defendant's interpretation of 35 U.S.C. § 145 and 35 U.S.C. § 146 is correct, we hold that Section 37 of the Lanham Trademark Act (15 U.S.C. § 1119) gives the courts parallel jurisdiction over the right to registration of trade-marks by providing:

"§ 1119. Same; power of court over registration.

"In any action involving a registered mark the court may determine the right to registration, order the cancellation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action. Decrees and orders shall be certified by the court to the Commissioner, who shall make appropriate entry upon the records of the Patent Office, and shall be controlled thereby." (15 U.S.C. § 1119).

The authority given by this section to the courts over the respective rights of parties to trademark registrations is concurrent with the authority of the Patent Office to conduct opposition and cancellation proceedings, and the remedies are not mutually exclusive. As Judge Maris comments:

"Congress has provided that all questions in respect to a registered trademark may be determined in one proceeding, thus preventing vexatious and harassing litigation as well as saving time, expense and inconvenience to the parties and to the courts and Patent Office tribunals." Simmonds Aerocessories, Ltd. v. Elastic Stop Nut Corp., 257 F.2d 485, CCA 3 – 1958.

Defendant contends that 35 U.S.C. § 1119 may not be invoked by plaintiff because the statute, on its face, pertains only to *registered* marks: plaintiff does not have a *registered* mark but is only seeking a registration on the basis of an application. We think the short answer to this is that *Duron's* trademark registration is involved. The rationale of the statute as well as the authorities support this position. Simmonds Aero-

---

6. 35 U.S.C. § 146 provides, inter alia: "Judgment of the court in favor of the right of an applicant to a patent shall authorize the Commissioner to issue such patent on the filing in the Patent Office of a certified copy of the judgment and on compliance with the requirements of law." 35 U.S.C. § 145 provides, inter alia: "The court may adjudge that such applicant is entitled to receive a patent for his invention, as specified in any of his claims involved in the decision of the Board of Appeals, as the facts in the case may appear and such adjudication shall authorize the Commissioner to issue such patent on compliance with the requirements of law."

7. Upon its determination the court shall return to the Commissioner a certificate of its proceedings and decision, which shall be entered of record in the Patent Office and govern the further proceedings in the case.

cessories Ltd. v. Elastic Stop Nut Corp., supra; Avon Shoe Co. v. David Crystal, Inc., supra; Massa v. Jiffy Products Co., Inc., 240 F.2d 702; CCA9–1957, cert. den. 353 U.S. 947, 77 S.Ct. 825, 1 L.Ed. 2d 856. In the Jiffy Products case the court directed the Commissioner of Patents to cancel the plaintiff's registration and to award a registration to Jiffy (defendant) upon a proper application, where Jiffy had not as yet filed an *application* for registration.

■■ A more serious question is whether 15 U.S.C. § 1119 is applicable to a case following the route of the administrative process or whether it relates only to civil actions for infringement or declaratory judgment involving trademark registrations begun in the district courts. In other words, is the administrative process exclusive (except as to the judicial review provided under Section 21) over *applications* for registrations? We do not find this point discussed in the cases. There are no apparent reasons of legislative history which would require the limiting of the plain words of 15 U.S.C. § 1119 in such a way.[8] We note too that the nature of the review provided under section 21 is de novo, with the right to introduce evidence not before the Patent Office, rather than a review limited to the record. It would do no violence to the administrative process under the circumstances, and would result in a substantial savings of time and determine the matter in one proceeding, to allow the district court to modify a Patent Office determination in the light of all the evidence. Since the district court could go all the way and find that a party is entitled to register his mark, no good reason appears why it could not go part of the way and find that he is entitled to a modified form of registration.

Affirmed.

8. The act is referred to generally in the House and Senate Reports but specific sections are not mentioned. House Report No. 603, 78th Cong., 1st Session in referring to the Act as a whole states: "The purpose of this bill is to place all matters relating to trade-mark in one stat- ute and to eliminate judicial obscurity, to simplify registration and to make it stronger and more liberal, to dispense with mere technical prohibitions and arbitrary provisions to make procedure simple and inexpensive, and relief against infringement prompt and effective."