**EXCHANGE BUFFET CORPORATION, Petitioner,**

v.

**NEW YORK STOCK EXCHANGE and Securities and Exchange Commission, Respondents.**

**No. 380, Docket 24374.**

United States Court of Appeals Second Circuit.

Submitted April 12, 1957.

Decided May 15, 1957.

2. 133 F.Supp. 130, 142.

Milton S. Harrison, New York City, for petitioner.

Milbank, Tweed, Hope & Hadley, New York City (A. Donald MacKinnon and Edward J. Reilly, Jr., New York City, of counsel), for respondent New York Stock Exchange.

Thomas G. Meeker, Gen. Counsel, David Ferber, Asst. Gen. Counsel, and Joseph B. Gildenhorn, Atty., Securities and Exchange Commission, Washington, D. C., for respondent Securities and Exchange Commission.

Before MEDINA and WATERMAN, Circuit Judges, and LEIBELL, District Judge.

MEDINA, Circuit Judge.

Petitioner, the Exchange Buffet Corporation, seeks to have us set aside an order of the SEC, granting an application by the New York Stock Exchange, pursuant to the provisions of Section 12 (d) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78*l*(d), and Rule X–12D2–1 (17 C.F.R. 240, 12d2–1), to strike petitioner's capital stock from listing and registration on the New York Stock Exchange. The SEC found that the rules of the New York Stock Exchange relating to delisting had been complied with and that the application should be granted without the imposition of any terms or conditions.

Petitioner is a New York corporation organized in 1913, engaged in the business of operating restaurants and cigar stands. On September 30, 1955, the capital stock consisted of 246,889 shares. As of April 30, 1955, the net tangible assets were $266,516, and on November 14, 1955, the approximate market value of the capital stock was $493,778. The company's earnings deficits in the fiscal years ending April 30, 1953, 1954 and 1955 ranged from $37,000 to $311,758.

When petitioner's capital stock was admitted to trading on the New York Stock Exchange in 1922, Section 4 of Article XXXIII of the Constitution of the Exchange in effect provided that the Governing Committee might at any time suspend dealings and summarily remove the securities of any listed corporation from the list.

The Securities Exchange Act of 1934 established in the public interest and for the protection of investors, and for other cognate reasons, a pattern of control by the SEC that required the registration of exchanges, the filing of copies of the constitution, by-laws and rules of such exchanges and the filing with the SEC "forthwith" of any amendments. The SEC was required to find, as a condition to permitting an exchange to be registered, that the rules are "just and adequate to insure fair dealing and to protect investors," but Section 6(c), 15 U.S. C.A. § 78f specifies that nothing in the Act "shall be construed to prevent any exchange from adopting and enforcing any rule not inconsistent with the Act and the SEC's rules thereunder or with applicable state laws."

The control of the SEC over delisting is implemented by Sections 12(d) and 19(b) of the Act, 15 U.S.C.A. § 78s(b); and the decision of this case depends upon the interpretation to be given to these two sections, as supplemented by Rule X–12D2–1.

Section 12 sets forth the registration requirements for securities. The relevant portion of subdivision (d), which concerns us here, is:

> "A security registered with a national securities exchange may be withdrawn or stricken from listing and registration in accordance with the rules of the exchange and, upon such terms as the Commission may deem necessary to impose for the protection of investors, upon application by the issuer or the exchange to the Commission * * *."

Rule X–12D2–1(3) provides that suspension of trading shall not terminate the registration of any security; and the Act contemplates that the matter be brought before the SEC upon application of the issuer or the exchange. In connection with the termination of registration, the specific provision of the Act is that this shall take place only "upon such terms as the Commission may deem necessary to impose for the protection of investors."

The following portion of Section 19(b) of the Act, which is applicable to listing and delisting as well as numerous other matters, governs the control of the SEC over the rules of an exchange:

> "The Commission is further authorized, if after making appropriate request in writing to a national securities exchange that such exchange effect on its own behalf specified changes in its rules and practices, and after appropriate notice and opportunity for hearing, the Commission determines that such exchange has not made the changes so requested, and that such changes are necessary or appropriate for the protection of investors or to insure fair dealing in securities traded in upon such exchange or to insure fair administration of such exchange, by rules or regulations or by order to alter or supplement the rules of such exchange * * *."

On July 21, 1955, the Board of Governors of the New York Stock Exchange amended its rule, which spelled out specific standards as guides for continued listing of securities, so as to provide that delisting would be considered where:

> * * * the size of a company whose common stock is listed has been reduced, as a result of liquidation or otherwise, to below $2,000,000 in net tangible assets or aggregate market value of the common stock, and the average net earnings after taxes for the last three years is below $200,000.

Notice of this change in policy was sent to all listed companies in the form of a supplement to the Exchange's Company Manual. As petitioner failed to meet the revised standards, a public hearing of which petitioner had timely notice, was held on November 15, 1955, to consider whether the stock of petitioner be delisted, and on December 15, 1955, a resolution was adopted by the Board of Governors for the delisting of the stock which directed that an application to delist be filed with the SEC. Trading in the stock was suspended on December 27, 1955, the application was filed with the SEC on January 17, 1956, the matter took its regular course before the SEC, which on September 4, 1956, issued its Findings, Opinion and Order, granting the Exchange's application to delist the stock without the imposition of any terms or conditions.

We hold these successive steps and proceedings to be a precise and in all respects proper compliance with the expressed intent and purpose of Section 12(d). We hold further that Rule X–12D2–1, promulgated by the SEC in its General Rules and Regulations under the Securities Exchange Act of 1934 and published as 17 C.F.R. 240, 12d2–1, is a proper and lawful exercise of the powers granted by the Congress to the SEC, and

that, where the SEC has permitted an amended rule to become effective without requesting changes or instituting a proceeding under Section 19(b), it is not authorized to deny an application to delist a security under Section 12(d) where there has been compliance with the amended rule of the Exchange.

There is nothing whatever in petitioner's contentions that there is essential unfairness in the application of what petitioner insists is "a test having retroactive application," a species of *ex post facto* ruling, and that the SEC has abdicated its powers in ruling that in its disposition of the Section 12(d) proceeding it could do no more than impose "such terms as the Commission may deem necessary to impose for the protection of investors."

There is no basis for the claim of unfairness. All companies whose stock is listed are informed that the New York Stock Exchange Rules are subject to constant revision in the light of the changing economy and that their stock may be delisted if they do not meet standards established or revised subsequent to the original listing of the stock. The reference to "the average net earnings after taxes for the last three years," as well as to the size of the company and the value of its net tangible assets or the "aggregate value of the common stock" is in all respects reasonable. One of the main purposes of the Act was the protection of investors and prospective investors. Future purchasers of securities are those peculiarly in need of the sort of protection which is afforded by delisting. If new standards could be made effective only after a lapse of years or even months, such protection might turn out to be illusory and of the too-late variety. As the Commission pointed out in its opinion in the case at bar, the possible adverse effects upon current security holders "inherent in any delisting * * * must be weighed against the protection afforded future purchasers by

removing from exchange trading securities found unsuitable for that market."

The so-called abdication of power by the SEC comes to no more than this: when the amended rule was promulgated the SEC allowed it to become effective and decided not to challenge its propriety or reasonableness in a Section 19(b) proceeding. This is the exercise rather than the abdication of power. Moreover, after the commencement of the Section 12(d) proceeding, it was still not too late for the SEC to hold the delisting proceeding in abeyance until it had taken such action as it thought proper pursuant to the provisions of Section 19(b).

■ Petitioner has, we think, entirely misconceived the mechanics of the Act in this matter of delisting. "Although a wide measure of initiative and responsibility is left with the exchanges, reserved control is in the Commission if the exchanges do not meet their responsibility." H.R.Rep. No. 1383, 73d Cong., 2d Sess. (1934), p. 15. Accordingly, it is within the power of the exchange to alter its delisting rules at any time and to suspend trading in any particular stock. The SEC then may exercise its control in either of the two ways prescribed in Sections 12(d) and 19(b). If in the exercise of its supervisory powers the SEC decides to let the delisting rule of the exchange remain unchallenged and acts only on application of the issuer or the exchange in a Section 12 (d) proceeding, the legislative pattern contemplates that the power of the SEC in that proceeding be limited to the imposition of "such terms as the Commission may deem necessary to impose for the protection of investors." That the SEC found it unnecessary to impose any terms in the Section 12(d) proceeding in this case was a proper exercise of its functions and we shall not disturb the finding.

Petition denied.