In the Matter of Cavanagh Communities Corporation, Debtor.

**CAVANAGH COMMUNITIES CORPORATION,**
Petitioner-Appellee,

v.

**NEW YORK STOCK EXCHANGE, INC.,**
Respondent-Appellant.

**No. 75 B. 243.**

United States District Court,
S. D. New York.

July 20, 1976.

## FIGURE 5

Schematic representation of device following step 6.

## FIGURE 6

Schematic representation of device following step 7.

## FIGURE 7

Finley, Kumble, Heine, Underberg & Grutman, New York City, for appellee; Gary L. Blum, Benjamin Jung, New York City, of counsel.

Milbank, Tweed, Hadley & McCloy, New York City, for appellant; Russel E. Brooks, Richard C. Tufaro, New York City, of counsel.

Securities and Exchange Commission, for amicus curiae; William D. Moran, Regional Administrator, New York City, Lawrence E. Nerheim, Paul Gonson, Jacob H. Stillman, Washington, D. C., of counsel.

Whitman & Ransom, New York City, for amicus curiae, United States Trust Compa-

ny of New York, as Successor Indenture Trustee.

## OPINION AND ORDER

KEVIN THOMAS DUFFY, District Judge.

This appeal from an order of the Bankruptcy Judge granting a preliminary injunction presents important issues concerning the jurisdiction of both the Bankruptcy Court and the Securities and Exchange Commission ("SEC," "the Commission"). The SEC has intervened as amicus curiae in support of appellant's position and the United States Trust Company of New York, as successor indenture trustee, has intervened in support of affirmance.

There are two aspects to the question before this Court: first, is a debtor's listing on a national securities exchange property within the meaning of the Bankruptcy Act such that a bankruptcy court may enjoin delisting procedures by the exchange; and, second, does the Securities Exchange Act of 1934 ("Exchange Act") divest a bankruptcy court of subject matter over delisting procedures on a national securities exchange.

Cavanagh Communities Corporation ("Cavanagh") is a publicly held corporation with both common stock and 9% convertible subordinated debentures listed on the New York Stock Exchange ("NYSE," "the Exchange"). On February 18, 1975, Cavanagh filed a petition for an arrangement under Chapter XI of the Bankruptcy Act, Sections 301 et seq., 11 U.S.C. § 701 et seq. On the same date, the Exchange issued a press release announcing that trading had been suspended in Cavanagh's securities and that application would be made to the SEC to delist them.

Thereafter, Cavanagh moved before the Bankruptcy Court for an injunction against initiation of delisting procedures by the Exchange arguing that the listing was a valuable asset of the debtor which should be preserved for the benefit of creditors and shareholders. At no time has Cavanagh attempted to challenge the suspension of trading in its securities; only the listing itself is sought to be retained.

Bankruptcy Judge Roy Babitt concluded that the Exchange listing is property within the summary jurisdiction of the Court. In doing so, he drew an analogy to *Chicago Board of Trade v. Johnson*, 264 U.S. 1, 44 S.Ct. 232, 68 L.Ed. 533 (1924) which held that individual membership on a commodity exchange is property within the meaning of the Bankruptcy Act despite certain restrictions on transferability. Judge Babitt reasoned that there would be no injury to the public and thus no conflict with the jurisdiction of the SEC in enjoining delisting procedures on a temporary basis.

Before considering the issues of bankruptcy law presented by this appeal, I must first consider whether the Exchange Act ousts the Bankruptcy Court of jurisdiction in this situation.

In passing the Exchange Act, Congress recognized that registration of securities, and their issuers was insufficient to protect the investing public. Thus, it provided for regulation and registration of the exchanges on which the securities would be traded. Sections 5–6, 15 U.S.C. §§ 78e–78f.

Section 12(a) of the Exchange Act prohibits trading in a security on a national securities exchange unless the security is registered with the exchange. 15 U.S.C. § 78*l* (a). Section 12(b) outlines in considerable detail the information which must be provided to the exchange by an issuer seeking to list its security, 15 U.S.C. § 78*l*(b). Stock exchange officials are required to certify approval of a security to the SEC and the listing cannot become effective until thirty days after filing with the Commission, 15 U.S.C. § 78*l*(d).

Once the security is approved for listing, neither the exchange nor the issuer may delist the security without SEC approval.

"A security registered with a national securities exchange may be withdrawn or stricken from listing and registration in accordance with the rules of the exchange and, upon such terms as the Commission may deem necessary to impose for the protection of investors, upon ap-

plication by the issuer or the exchange to the Commission. . . ."

Section 12(d), 15 U.S.C. § 78*l*(d).

SEC regulations promulgated pursuant to Section 12(d) govern the grounds and procedures for delisting. 17 CFR § 240.12d2-2(a)-(f). One such regulation incorporates the internal rules of the securities exchange as a basis for delisting by the SEC. 17 CFR § 240.12d2-2(c). Furthermore, under Section 19(b) the SEC is empowered "to alter or supplement the rules of [the] exchange . . . in respect of such matters as . . . (3) the listing or striking from listing . . . ." 15 U.S.C. § 78s.

In the present case the NYSE, a registered national securities exchange, sought to delist the Cavanagh securities pursuant to its own internal rule 499 which provides that "[s]ecurities admitted to the list may be suspended from dealings or removed from the list at any time." Among the criteria for delisting outlined by the exchange is "[a]n intent to file under any of the sections of the bankruptcy laws . . or a filing . . . ." (Section A16 at A–293). The NYSE internal delisting procedures provide that the issuer is entitled to an evidentiary hearing before a Committee of the Board of Directors of the Exchange (Section A16 at A294). If the decision of the Committee is adverse to the issuer, the Exchange may then apply to the SEC to delist. (Section A16 at 294.1).

In reviewing the application, the SEC may postpone delisting, impose conditions on delisting, order a hearing, or grant the application. 17 CFR 240.12d2-2(c). If the SEC does issue an order of delisting, it may then be reviewed by petitioning to the Court of Appeals pursuant to Section 25, 15 U.S.C. § 78y. See *Exchange Buffet Corp. v. N.Y.S.E.*, 244 F.2d 507 (2d Cir. 1957).

Appellants have argued that under the doctrine of primary jurisdiction, the question of delisting a security lies within the exclusive original jurisdiction of the SEC. *Far East Conference v. United States*, 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576 (1952). Appellees contend that the present case is more akin to *Gordon v. N.Y.S.E.*, 422 U.S.

659, 95 S.Ct. 2598, 45 L.Ed.2d 463 (1975) and *Silver v. N.Y.S.E.*, 373 U.S. 341, 83 S.Ct. 1246, 10 L.Ed.2d 389 (1963) which have required a rather strong showing of implied repeal where a statutory conflict has arisen. Appellees, of course, further argue that this standard has not been satisfied.

■ Under the theory of implied repeal, a conflicting statute will be deemed a nullity "only if necessary to make the . . . Act work, and even then only to the minimum extent necessary." *Silver v. N.Y.S.E.*, 373 U.S. at 357, 83 S.Ct. at 1257. In cases where it has been applied, the conflict has been between statutes which permit or require conflicting standards of conduct. For example, where a party has been sued under an antitrust law, it has successfully claimed immunity based on a more specific regulatory statute, such as the Securities Exchange Act, which is designed to supervise a particular industry. *Gordon v. N.Y. S.E.*, 422 U.S. 659, 95 S.Ct. 25, 98, 45 L.Ed.2d 463. See also *United States v. National Ass'n of Securities Dealers*, 422 U.S. 694, 95 S.Ct. 2427, 45 L.Ed.2d 486 (1975) (*Sherman Act v. Investment Company Act*). The present case is fundamentally different from the implied immunity cases in that the bankruptcy act is not a regulatory statute and does not establish a conflicting standard of conduct. The bankruptcy act, in this context, merely seeks to preserve property within the possession of the debtor regardless of its form. *Thompson v. Magnolia Petroleum Co.*, 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed.2d 876 (1940).

The Supreme Court has tacitly acknowledged the broad overlap between these two doctrines. *Ricci v. Chicago Mercantile Exchange*, 409 U.S. 289, 300–06, 93 S.Ct. 573, 34 L.Ed.2d 525 (1973). Jurisprudential theories should be recognized for what they are: shorthand verbalizations of common sense. The debate over which nomenclature should be employed can only lead to a possible victory of form over substance.

■ The primary jurisdiction doctrine, which I find to have application to this case, "is concerned with promoting proper rela-

tionships between the courts and administrative agencies charged with particular regulatory duties." *United States v. Western Pacific R. Co.*, 352 U.S. 59, 63, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956). Thus, "in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over." *Far East Conference v. United States*, 342 U.S. 570, 574, 72 S.Ct. 492, 494, 96 L.Ed. 576 (1952). "[W]here . . Congress has created a special administrative procedure for the determination of the status of persons or companies under a regulatory act and has prescribed a procedure which meets all requirements of due process, that remedy is exclusive." *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 404, 60 S.Ct. 907, 917, 84 L.Ed. 1263 (1940).

■ There are no hard and fast guides in determining when a matter should be initially decided by an administrative agency. Factors often relied upon are the need for uniformity, *Texas & Pacific R. Co. v. Abilene Cotton Oil Co.*, 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553, the advantage of specialized knowledge, *Far East Conference v. United States*, 342 U.S. at 574–75, 72 S.Ct. 492, and the "insight gained through experience," *id.* See also *Nader v. Allegheny Airlines*, 426 U.S. 290, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976).

■ The statutory authority of the SEC over listing and delisting of securities on an exchange is pervasive and comprehensive. Application to strike from listing must be made to the Commission and it may place "such terms [on delisting] as the Commission may deem necessary to impose for the protection of investors. . . ." 15 U.S.C. § 78*l*(d). Stock Exchange rules and regulations concerning delisting are expressly subject to SEC modification, 15 U.S.C. § 78s. The existence of this regulatory structure indicates Congressional concern that the skill and experience of the SEC be applied to delisting procedures.

The appellees have argued that the injunction merely seeks to prevent delisting for a temporary period and that no injury to the public could result. But it is possible that the Commission considers suspension of trading an incomplete and inadequate temporary remedy. For example, the SEC and the NYSE may, at some point, feel that the protection of the public requires that trading be resumed but that it would be detrimental to the securities market to do so on a national securities exchange. This option might be foreclosed if an injunction against delisting were in effect. It is also conceivable that the Commission might view securities of recently reorganized corporations as inherently unsuitable for trading on a securities exchange. If that is the case, then the bankruptcy court would only be postponing the inevitable.

To hold that an administrative agency should continue to exercise dominion over some aspects of a single problem but to deny jurisdiction over others which are integrally related is to fragmentize the authority which Congress intended the agency to have. There is plain merit in having one body, be it court or agency, consider this entire ball of wax.

If the debtor's representatives consider delisting imprudent at the present time, then their reasons can be presented to the Exchange and to the Commission. Should the Commission improperly exercise its authority or discretion, debtor's representatives may petition for review in the Court of Appeals, 15 U.S.C. § 78y.*

The result reached here is wholly in accord with decisions of two judges of this Court which have held that a shareholder

---

* While stay pending the outcome of the administrative process is frequently the proper course in applying the primary jurisdiction doctrine, dismissal may also be appropriate. *United States v. Michigan National Corp.*, 419 U.S. 1, 5–6, 95 S.Ct. 10, 42 L.Ed.2d 1 (1974). *See* K. C. Davis, Administrative Law Treatise (Supp. 1976) at ¶ 19.07. In light of the exclusivity of review provided for in 15 U.S.C. 78y, the only proper option is to decline to exercise jurisdiction.

may not challenge delisting procedures in the District Court but must resort to the SEC and ultimately the Court of Appeals. *Costello v. NYSE*, CCH Fed.Sec.L.Rep. ¶ 95,059 (S.D.N.Y.1975) (Griesa, J.); *Skurnick v. N.Y.S.E.*, 72 Civ. 1338 (S.D.N.Y. 1972) (Motley, J.). See also *Fifth Avenue Coach Lines, Inc. v. NYSE*, 26 A.D.2d 49, 270 N.Y.S.2d 852 (1st Dep't 1966); *Winkleman v. NYSE*, 445 F.2d 786 (3d Cir. 1971). It is also in line with *In the Matter of F. L. Jacobs Co.*, No. 42,235 (E.D.Mich., S.D.1967) which held that SEC delisting procedures are exclusive and beyond the jurisdiction of a district court sitting in bankruptcy.

■ As a second ground for review, appellant argues that the stock exchange listing is not property within the meaning of the Bankruptcy Act. Sections 342–44, 11 U.S.C. §§ 742–44; Section 70a(5), 11 U.S.C. § 110(a)(5). The claim here is that unlike individual membership on a commodity exchange which has been held to be property, *Chicago Board of Trade v. Johnson*, 264 U.S. 1, 44 S.Ct. 232, 68 L.Ed. 533 (1923), the listing of a security on an exchange may not be transferred to a third party corporation and has no pecuniary value.

The holding of the Court of Appeals in *Slenderella Systems v. Pacific Tel. & Tel. Co.*, 286 F.2d 488 (1961) supports appellant's position. There it was held that a telephone listing of a debtor is not within the summary jurisdiction of the bankruptcy court. The Court emphasized that there is no proprietary right to the telephone listing and, therefore, it is not property within the possession of the debtor. *Id.* at 490. In the present case, the exchange listing is expressly made subject to delisting at any time. NYSE Rule 499.

Although I am in agreement with the appellants on this point, it is unnecessary to dwell further on this question in light of my determination on the exclusive primary jurisdiction issue.

The order of the bankruptcy court granting a preliminary injunction is vacated.

SO ORDERED.