**C.L.A.S.S. PROMOTIONS, INC.,**
**Plaintiff-Appellant,**
**Cross-Appellee,**

v.

**D.S. MAGAZINES, INC.,**
**Defendant-Appellee,**
**Cross-Appellant.**

**Cal. Nos. 57, 84, Dockets**
**84–7253, 84–7255.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 21, 1984.

Decided Jan. 18, 1985.

Allison C. Collard, Roslyn, N.Y. (Collard, Roe & Galgano, P.C., Roslyn, N.Y., of counsel), for plaintiff-appellant, cross-appellee.

Robert L. Sherman, Mineola, N.Y. (Michael F. Dennis, Mineola, N.Y., of counsel), for defendant-appellee, cross-appellant.

Before VAN GRAAFEILAND and CARDAMONE, Circuit Judges, and MacMAHON, District Judge.[*]

MacMAHON, District Judge:

C.L.A.S.S. Promotions, Inc. ("Class Promotions") appeals from that part of a judgment of the United States District Court for the Southern District of New York, Charles L. Brieant, *Judge,* entered February 17, 1984, dismissing its claims for damages and forfeiture predicated upon alleged trademark infringement and unfair competition arising from the use of similar titles by two magazine publishers. D.S. Maga-

---

[*] Of the United States District Court for the South- ern District of New York, sitting by designation.

zines, Inc. ("D.S. Magazines") cross appeals from that part of the judgment which prohibits D.S. Magazines from using the word "Class" in the title of its magazine in any form other than the one appearing on the cover of the January 1984 edition and from using any format on its magazine cover in which the words "Right On! Presents" are smaller or located differently from those appearing in its January 1984 edition.

We affirm the partial dismissal of the action, but remand that part of the judgment granting an injunction in order that the district court may revise it in accordance with this opinion.

### PROCEEDINGS IN THE DISTRICT COURT

On September 12, 1983, Class Promotions moved for a preliminary injunction against D.S. Magazines' continued publication of its magazine, "RIGHT ON! PRESENTS CLASS," asserting that D.S. Magazines had infringed its trademark "CLASS." Following an evidentiary hearing, Judge Brieant, in a well-reasoned memorandum and order dated January 10, 1984, denied the motion, finding that there was no infringement by D.S. Magazines' later use of the mark because (1) the mark "CLASS" was a very weak mark; (2) there was only a slight overlap in the respective markets of the magazines; (3) D.S. Magazines did not adopt the mark in bad faith; (4) instances of actual confusion were *de minimis;* and (5) there was no likelihood that a reasonable buyer would confuse the marks. Later, D.S. Magazines stretched its preliminary victory by changing the design of its title. It magnified the word "Class" by shrinking the size of the words "Right On. Presents." Apparently finding that this made the word "Class" the identifying title, the court entered final judgment dismissing the claim for existing infringement but granting the limited injunction described above.

### THE APPEAL

On this appeal, Class Promotions argues that the district court erred in finding that its mark was weak, that there was no likelihood of confusion, and that there was no trademark infringement. After carefully considering the record, we cannot say that any of the challenged findings are clearly erroneous and therefore reject the argument.

### VALIDITY OF THE MARK

There is no question that, as between the parties, Class Promotions was the first user of the mark "CLASS." In August 1979, it began publication of a bi-monthly, pocket-size, magazine, "CLASS," which it distributed throughout New York City and the Caribbean. The magazine is directed to black Americans and readers interested in black culture, as well as West Indian ethnic culture and third world countries. In 1983, 150,000 copies of the magazine were distributed.

D.S. Magazines publishes a number of magazines, including one called "RIGHT ON!," directed to black teenagers. "RIGHT ON!" has been in existence for twelve years and has reached a national monthly circulation of approximately 180,000 copies. Realizing that, since its initial publication, "RIGHT ON!'s" subscribers had grown to adults, D.S. Magazines decided to capitalize on this audience by publishing an adult magazine entitled "RIGHT ON! PRESENTS CLASS." The first issue was published in December 1982 and distributed in every major city in the United States. The magazine is full size, and its editorial emphasis is directed to black Americans, with little or no emphasis on third world countries or Caribbean culture. Slightly less than one year after its initial issue, monthly publication reached 370,000 copies, with monthly newsstand sales of approximately $235,000.

A protectable trademark is established when the mark is adopted and used to identify a product. A generic mark or a descriptive mark which has no secondary meaning cannot be a valid trademark. *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4 (2d Cir.1976). *See*

15 U.S.C. § 1052(e)(1) (1976). The district court suggested that the mark "CLASS" was merely descriptive and therefore not protectable. It is clear, however, that Class Promotions had adopted and used the mark "CLASS" as the title of its magazine. The mark is not descriptive of the publisher's product, magazines, or of any specific product offered for sale.[1] Instead, the mark is suggestive because "it requires imagination, thought and perception to reach a conclusion as to the nature of [its] goods." *Abercrombie & Fitch Co. v. Hunting World, Inc., supra,* 537 F.2d at 11, citing *Stix Products, Inc. v. United Merchants & Manufacturers, Inc.,* 295 F.Supp. 479, 488 (S.D.N.Y.1968). In *Playboy Enterprises, Inc. v. Chuckleberry Publishing, Inc.,* 486 F.Supp. 414, 420 (S.D. N.Y.1980), *aff'd,* 687 F.2d 563 (2d Cir.1982), the court held that "the word 'playboy', evoking the aspirations, if not the life-style, of certain men, suggests to the imagination the nature of the magazine's content" and therefore is a suggestive mark. Analogously, the word "Class" is a suggestive mark and thus a valid trademark without proof of secondary meaning.

NON-INFRINGEMENT

 Given a valid trademark, the critical issue in an action for trademark infringement is whether there is any likelihood that an appreciable number of reasonable consumers would be misled, or simply confused, as to the source of the goods in question. *Maternally Yours, Inc. v. Your Maternity Shop, Inc.,* 234 F.2d 538, 542 (2d Cir.1956). The court, in making this determination and fashioning equitable relief, must look not merely to the similarity of the conflicting marks but to a number of other factors. *Polaroid Corp. v. Polarad Electronics Corp.,* 287 F.2d 492, 495 (2d

Cir.), *cert. denied,* 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961). *See also Buitoni Foods Corp. v. Gio. Buton & C. S.p.A.,* 680 F.2d 290 (2d Cir.1982); *McGregor-Doniger, Inc. v. Drizzle Inc.,* 599 F.2d 1126 (2d Cir.1979); *Mushroom Makers, Inc. v. R.G. Barry Corp.,* 580 F.2d 44 (2d Cir. 1978), *cert. denied,* 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979). The so-called *"Polaroid formula"* is:

> Where the products are different, the prior owner's chance of success is a function of many variables: the strength of his mark, the degree of similarity between the two marks, the proximity of the products, the likelihood that the prior owner will bridge the gap, actual confusion, and the reciprocal of defendant's good faith in adopting its own mark, the quality of defendant's product, and the sophistication of the buyers.

*Polaroid Corp. v. Polarad Electronics Corp., supra,* 287 F.2d at 495.

1. *Strength of the Mark*

 Although the word "Class" is capable of functioning as a trademark, the district court found that it was a very weak mark. The strength of a mark refers to its distinctiveness, "or more precisely, its tendency to identify the goods sold under the mark as emanating from a particular, although possibly anonymous, source." *McGregor-Doniger, Inc. v. Drizzle Inc., supra,* 599 F.2d at 1131. Applying this test, the mark "CLASS" is a weak mark. "CLASS" magazine has only been in circulation since 1979, and, although it claims to have a broad geographical scope,[2] its actual distribution is narrow—150,000 copies in 1983. More importantly, there is no evidence that the mark "CLASS" is associated in the public's mind with the magazine

---

**1.** *Cf. Reese Publishing Co. v. Hampton Int'l Communications, Inc.,* 620 F.2d 7 (2d Cir.1980) (magazine title "Video Buyer's Guide" is a generic mark because it describes not only a class of goods but a class of magazines about those goods); *CES Publishing Corp. v. St. Regis Publications, Inc.,* 531 F.2d 11 (2d Cir.1975) (title "Consumer Electronics" is a generic term describing electronic equipment and therefore

merely descriptive and not entitled to trademark protection).

**2.** The cover of Class Promotions' magazine represents that it circulates in Canada, London, Africa, Jamaica, Trinidad & Tobago, and the Eastern Caribbean, as well as in the United States.

"CLASS" or with its publisher, Class Promotions.

### 2. Similarity of Marks

 D.S. Magazines' mark consists of the totality of the words "RIGHT ON! PRESENTS CLASS." However, throughout the magazine and on some letterheads and business cards, the word "Class" is used to refer to the publication. In assessing the importance of the similarity of the marks, the district court properly focused on the general impression conveyed to the purchasing public by the respective marks. The court carefully contrasted the size, layout, design, and logotype of the two titles and found that the differing presentations of the marks reduced the potential for confusion.[3] McGregor-Doniger, Inc. v. Drizzle Inc., supra, 599 F.2d at 1133.

### 3. Product Proximity and Quality of Defendant's Product

The district court contrasted the differences in appearance, size, content, geographical distribution, and audience appeal and concluded that the competitive distance between the respective magazines militated against a finding of likelihood of confusion. The physical attributes and layouts of the magazines are clearly distinguishable. Although both magazines are directed to black American audiences, the editorial emphasis of "CLASS" magazine is on third world and West Indian cultures, whereas "RIGHT ON! PRESENTS CLASS" has no such emphasis. Moreover, "CLASS" magazine circulates in numerous countries outside the United States, while "RIGHT ON! PRESENTS CLASS" is only sold in the United States. The high quality of D.S. Magazines' product is not contested by Class Promotions.

### 4. Bridging the Gap

The term "bridging the gap" is used to describe the senior user's interest in preserving avenues of expansion and entering into related fields. Class Promotions presented no evidence that it intends to publish a magazine comparable to "RIGHT ON! PRESENTS CLASS." It is therefore unlikely that "CLASS" magazine will bridge the gap.

### 5. Actual Confusion

Class Promotions contends that the district court erred in failing to consider evidence of four instances of actual confusion. These instances consisted of four isolated written communications, two from advertising agencies and two from magazine subscribers. Two of these letters were properly excluded from evidence on the ground of hearsay. The two letters which were admitted are insignificant when contrasted to the hundreds of thousands of magazines sold over the years. See, e.g., Scott Paper Co. v. Scott's Liquid Gold, Inc., 589 F.2d 1225 (3d Cir.1978); Mushroom Makers, Inc. v. R.G. Barry Corp., supra.

### 6. Good Faith

D.S. Magazines was in good faith in its use and adoption of the mark "CLASS." The magazine "RIGHT ON! PRESENTS CLASS" follows the older and more well-known magazine, "RIGHT ON!," as part of a coherent marketing plan. Moreover, the testimony showed that D.S. Magazines launched its new magazine with no actual knowledge of any prior use of the mark "CLASS" and did not find out about Class Promotions' use of the mark until after it

---

**3.** Class Promotions' mark "CLASS" is presented at the top of the magazine cover in a three-line oval raceway, with the word "International" appearing above the word "Class," both words in block sans serif letters. Below the word "Class" and as an integral part of the logo appear the words "Caribbean, Latin, African, (American), Sights & Sounds."

D.S. Magazines' mark is presented as "Right On! Presents Class." The words "Right On!" are displayed to the left, in the same semi-script which "RIGHT ON!" magazine uses for its mark. The word "Presents" is in small block letters, followed by the word "Class" in traditional full serif-type capitals. There are no oval lines, as on Class Promotions' presentation, and no geographic claims made on the cover.

had made a substantial commitment to the development of its own magazine.

The district court gave due consideration to all of the *Polaroid* factors in reaching its conclusion that there was no likelihood of confusion. We agree that there was no infringement.

### THE CROSS-APPEAL

█ Despite the finding of no infringement, we hold that the district court was correct in granting some form of permanent injunctive relief. After that court's issuance of the January 10, 1984 order, D.S. Magazines significantly reduced the size of the words "Right On! Presents" on its magazine cover. The effect of this reduction was to make the respective marks "RIGHT ON! PRESENTS CLASS" and "CLASS" virtually identical, thereby increasing the likelihood of confusion and raising serious questions as to D.S. Magazines' good faith.

These actions on the part of D.S. Magazines mandate some form of injunctive relief. We find, however, that the district court's jurisdiction is too restrictive in prohibiting D.S. Magazines from using the word "Class" in any form other than that of its January 1984 edition and from using any format of "Right On! Presents" that is smaller or located differently from the one which appears in that edition. We therefore remand this case to the district court to amend its injunction so that, in substance, it directs D.S. Magazines to use the words "Right On! Presents" as part of the title on its magazine cover, so as not to have the cover appear to use only the word "Class," *i.e.,* with respect to size and location, *essentially*, in the format found on the January 1984 edition. We affirm the rest of the district court's injunction, paragraphs 3 through 9.

The judgment of the district court is affirmed as to the partial dismissal of the action and remanded as to the issuance of the limited permanent injunction.