**AMERICAN CYANAMID COMPANY, Plaintiff,**

v.

**CAMPAGNA Per La FARMACIE IN ITALIA S.P.A. and Cosprophar, Inc., Defendants.**

No. 87 Civ. 7187 (KTD).

United States District Court, S.D. New York.

Nov. 24, 1987.

Townley & Updike, New York City, for plaintiff; Marie V. Driscoll, Stanley J. Silverberg, Wayne, N.J., of counsel.

Bucknam and Archer, Garden City, N.Y., for defendants; Fernanda M. Fiordalisi, Martin W. Schiffmiller, of counsel.

## MEMORANDUM AND ORDER

KEVIN THOMAS DUFFY, District Judge.

Plaintiff American Cyanamid Company ("Cyanamid") brought on a motion by Or-

der to Show Cause for a preliminary injunction and expedited discovery against defendants Campagna Per La Farmacie In Italia S.P.A. and Cosprophar, Inc. (collectively referred to as "Campagna"). I granted a temporary restraining order and held a hearing on the preliminary injunction on October 27, 1987. Based on the following findings of fact and conclusions of law, the preliminary injunction and expedited discovery are hereby granted to Cyanamid.

## FACTS

Cyanamid brings this action alleging that Campagna's use of the trademarks MATERNA and MATERNITÁ constitute: (1) infringement of Cyanamid's federally registered MATERNA trademark in violation of federal trademark law, 15 U.S.C. § 1114 (1982); (2) false designations of origin and false representations in violation of federal trademark law, 15 U.S.C. § 1125(a) (1982); (3) unfair competition under the common law of New York and other states; (4) dilution of Cyanamid's MATERNA trademark in violation of New York's dilution statute, N.Y.Gen.Bus.Law § 368–d (McKinney 1984); and (5) deception in violation of New York's deceptive practices statute, N.Y.Gen.Bus.Law § 349 (McKinney Supp. 1984).

Cyanamid is a Maine corporation with its principal place of business in New Jersey. Through its Lederle Laboratories Division, Cyanamid distributes and sells pharmaceutical products, including prenatal vitamin and mineral tablets under the trademark MATERNA.

Campagna Per La Farmacie in Italia S.P. A. is an Italian corporation with its principal place of business in Italy. Campagna manufactures and markets cosmetics for sale through pharmacies. Its products include prenatal creams and lotions sold under the names MATERNA and MATERNITÁ.

Cosprophar, Inc., also known as Korff USA, is a New York corporation with its principal place of business in New York. Cosprophar is the exclusive United States distributor of Campagna's MATERNA and MATERNITÁ lotions.

In January, 1975, Cyanamid developed its prenatal vitamin and mineral tablets and began to use MATERNA as a trademark for them. Cyanamid's MATERNA vitamins provide nutritional supplements to women during pregnancy and for a period of time after giving birth. They are available to pregnant women by prescription from their physicians in bottles bearing the MATERNA mark. In addition, each tablet is stamped with the MATERNA mark. On February 24, 1981, Cyanamid registered the MATERNA trademark in the United States Patent and Trademark Office under Registration No. 1,147,471. Cyanamid has advertised its MATERNA vitamins in medical publications, and in its own publication which is distributed to physicians for display in their waiting rooms. Cyanamid has also distributed vitamin samples, informational pamphlets, and promotional items bearing the MATERNA mark to physicians for distribution to their patients. United States sales revenues for MATERNA vitamins exceed $10,000,000 a year. The MATERNA vitamins are expensive, and are marketed to women in upper income brackets.

In 1980, Campagna developed its line of six cosmetic skin lotions designed for use by pregnant women and new mothers, and began selling the line in Italy. Campagna marketed this line in the United States for the first time in June, 1986. The product line includes facial, breast, abdominal and body lotions and is available for over-the-counter retail sale in pharmacies. The line is marketed under the mark MATERNITÁ, which means "maternity" in Italian, and which is displayed on the containers in conjunction with a flower design. The names of the individual lotions incorporate the term MATERNA, which means "maternal" in Italian, and include MATERNA FACE, MATERNA BREAST, MATERNA NURSING, MATERNA ABDOMEN, MATERNA BODY, and MATERNA RIPARATRICE. The individual product names are displayed on the respective containers just below the MATERNITÁ mark and design. On November 25, 1986, Campagna applied to the

Patent and Trademark Office for registration of its MATERNITÁ mark and accompanying design under both cosmetic (Class 3) and pharmaceutical (Class 5) designations. (Campagna applied for an Italian trademark on the mark and design on June 5, 1986.) The application is still pending. Campagna has advertised its whole cosmetic products line, including the MATERNITÁ/MATERNA skin lotions, in sales brochures which are sent to pharmacies for display and distribution to consumers. The lotions sell for between $23.50 and $39.50, and are marketed to women in upper income brackets.

Cyanamid claims that Campagna's MATERNITÁ and MATERNA marks are confusingly similar to its MATERNA trademark. Cyanamid argues that because of the close proximity of the products at issue, and because the products are marketed to the same discrete class of consumers, high income pregnant women, it is likely that consumers will mistakenly believe that Campagna's MATERNITÁ/MATERNA lotions come from the same source or are part of Cyanamid's MATERNA vitamin line.

In response to Cyanamid's motion for a preliminary injunction and expedited discovery, Campagna advises the court that it is prepared to take the following actions: (1) cease use of the MATERNA mark in any manner on its products; (2) restrict its trademark application to the cosmetics class (Class 3) and cancel any designation of the pharmaceutical class (Class 5); and (3) delete the term MATERNA from all of its packaging and advertising materials. However, Campagna asserts that it is not prepared to cease use of its MATERNITÁ mark, and argues that it is not confusingly similar to Cyanamid's MATERNA mark. Campagna also refuses to recall the products already distributed or change any of its existing packaging.

## DISCUSSION

In order to succeed on a motion for a preliminary injunction, the well-settled law of this Circuit requires that the plaintiff establish "irreparable harm *and* (1) either probable success on the merits *or* (2) sufficiently serious questions going to the merits to make them a fair ground for litigation *plus* a balance of hardships tipping decidedly in the plaintiff's favor." *Madrigal Audio Laboratories, Inc., v. Cello, Ltd.,* 799 F.2d 814, 821–22 (2d Cir.1986) (emphasis in original).

A preliminary injunction barring a party from using a mark or symbol similar to a registered trademark may be issued only when "there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question." Such a showing satisfies a trademark holder's burden, when seeking a preliminary injunction, of establishing both likelihood that he will succeed on the merits and that he will suffer irreparable harm if an injunction is not granted.

*Madrigal, supra,* 799 F.2d at 822 (quoting *Mushroom Makers, Inc. v. R.G. Barry Corp.,* 580 F.2d 44, 47 (2d Cir.1978), *cert. denied,* 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979)) (citations omitted).

In determining whether a likelihood of such confusion exists, this court must evaluate a number of factors:

(1) the strength of plaintiff's mark;

(2) the degree of similarity between the two marks;

(3) the proximity of the products;

(4) the likelihood that the prior owner will bridge the gap;

(5) any actual confusion;

(6) defendant's good faith in adopting its own mark;

(7) the quality of defendant's products; and

(8) the sophistication of the buyers.

*C.L.A.S.S. Promotions v. D.S. Magazines, Inc.,* 753 F.2d 14, 17 (2d Cir.1985); *Polaroid Corp. v. Polarad Electronics Corp.,* 287 F.2d 492, 495 (2d Cir.), *cert. denied,* 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961). Analysis of these factors in this case indicates that a likelihood of confusion exists between the two marks at issue.

■ "The term 'strength' as applied to trademarks refers to the distinctiveness of the mark, or more precisely, its tendency to identify the goods sold under the mark as emanating from a particular, although possibly anonymous, source." *McGregor–Doniger, Inc. v. Drizzle, Inc.,* 599 F.2d 1126, 1131 (2d Cir.1979). While MATERNA may suggest the market to which Cyanamid's product is aimed, the term does not describe vitamin tablets, and is therefore an arbitrary, fanciful, and strong mark. *Maternally Yours, Inc. v. Your Maternity Shop,* 234 F.2d 538, 544 (2d Cir.1956).

The marks at issue are very similar. Campagna uses two marks on its product line. It uses both Cyanamid's exact mark, MATERNA, as well as MATERNITÁ, which simply adds two letters to Cyanamid's mark and results in a word which resembles MATERNA in appearance, sound, and meaning. These factors indicate a likelihood of confusion between the two marks.

■ Cyanamid does not assert that Campagna's lotions are directly competitive with its vitamin tablets. Rather,

the degree of proximity between the two products is relevant here primarily insofar as it bears on the likelihood that customers may be confused as to the *source* of the products, rather than as to the products themselves, and the concern is not direct diversion of purchasers but indirect harm through loss of goodwill or tarnishment of reputation.

*McGregor–Doniger, supra,* 599 F.2d at 1134–35 (emphasis in original). The products at issue here have some proximity to each other. While vitamin tablets and skin lotions are not the same, the specific products at issue are both aimed at exactly the same discrete class of purchasers, are both purchased in pharmacies, and are both used in the same prenatal context. These factors indicate a likelihood that customers may be confused as to the source of these products.

The term "bridging the gap" refers to the prior owner's "interest in preserving avenues of expansion and entering into related fields." *C.L.A.S.S., supra,* 753 F.2d at 18. Cyanamid has presented no evidence that it intends to develop a line of skin lotions aimed toward the market of pregnant women and new mothers.

As there is no evidence of actual confusion in this matter, it has no bearing in this analysis. It is not necessary that there be confusion between the products themselves to justify relief under the trademark and unfair competition laws.

There is no evidence of Campagna's bad faith in this matter. Rather, Campagna asserts that it made a search in 1980 prior to adopting the MATERNITÁ mark and concluded that the mark would not infringe any prior registration or pending application in the United States. Campagna argues that this evidence of its good faith is corroborated by the fact that the Trademark Examiner who is considering its MATERNITÁ application for registration did not cite Cyanamid's MATERNA trademark as conflicting with Campagna's application.

The high quality of Campagna's products is not contested by Cyanamid. Even assuming that Campagna manufactures very high-quality products, Cyanamid has no control over Campagna. Cyanamid's MATERNA mark should not bear the risk of accountability for Campagna's products. "[T]he senior user of a mark is entitled to protect ... its right to run and develop its business free from damage to its reputation by the potentially improper practices of an infringer not under its control." *Parrot Jungle, Inc. v. Parrot Jungle, Inc.,* 512 F. Supp. 266, 270 (S.D.N.Y.1981).

Pregnant women and persons involved in the chain of product distribution have all degrees of sophistication. Campagna's use of the MATERNA mark, identical to Cyanamid's mark, is very likely to cause confusion, as to the origin of the products at issue, among even the most sophisticated and careful purchasers. Because of the similarity between the MATERNA and MATERNITÁ marks, in sound, appearance, and meaning, there is some likelihood of confusing even sophisticated purchasers of these two marks as well.

Campagna raises several arguments in defense. It claims that its MATERNITÁ

mark is distinctly different from and not confusingly similar to Cyanamid's MATER-NA trademark. Campagna also asserts that it uses the term MATERNA on its containers and packaging in a descriptive manner, and not as a trademark. I have already addressed and made findings concerning the issue of the similarity between Cyanamid's MATERNA trademark and Campagna's MATERNITÁ mark. Campagna's statements that it is willing to discontinue use of the term MATERNA on any of its products, packaging, and advertising materials undercuts its claim to use of that term, and virtually concedes that it infringes on Cyanamid's trademark.

■ Campagna also argues that Cyanamid knew of, and did not object to, its use of the MATERNA/MATERNITÁ marks as early as November of 1984, when Campagna allegedly mailed Cyanamid a copy of its advertising brochure including reference to its MATERNA/MATERNITÁ line of products. Campagna urges that Cyanamid is guilty of laches in pursuing any trademark infringement claim. However, Campagna presents no evidence of who at Cyanamid's Lederle Laboratories might have seen its brochure, or how that brochure was supposed to have informed Cyanamid of Campagna's plans to use the MATER-NA/MATERNITÁ marks in the United States. Rather, Campagna alleges that its correspondence with Cyanamid's branch in Belgium provides sufficient connection, and should have been admitted into evidence at the hearing. Even assuming that that correspondence is accurate and true, evidence of contacts between Campagna and Cyanamid in Belgium is completely irrelevant to the issue of trademark infringement in the United States. It neither supports Campagna's claim that Cyanamid knew of its use of the MATERNA/MATERNITÁ marks nor should have been admitted into evidence at the hearing.

■ Finally, Campagna argues that Cyanamid is required to exhaust its administrative remedies before bringing suit in federal district court. Campagna therefore asserts that Cyanamid must institute an administrative proceeding in opposition to Campagna's application to register the MA-TERNITÁ mark prior to bringing a cause of action for trademark infringement. While not mentioned, Campagna apparently relies on the doctrine of primary jurisdiction to claim that this action must be stayed pending the outcome of the Patent and Trademark Office proceedings concerning its registration application.

> Primary jurisdiction is a doctrine which "comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views." It is a flexible concept, and there is no fixed formula for applying the doctrine. Further, application of primary jurisdiction principles is discretionary and depends upon the facts of each individual case.

*C-Cure Chemical Co., Inc. v. Secure Adhesives Corp.*, 571 F.Supp. 808, 823 (W.D. N.Y.1983) (quoting *United States v. Western Pacific Railway Co.*, 352 U.S. 59, 64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956)) (citation omitted).

■ Different questions are at issue in the administrative and judicial proceedings discussed here. The proceedings before the Patent and Trademark Office will determine the right to register Campagna's mark, while the action at bar will determine the right to use that mark, and whether it infringes Cyanamid's trademark. Judge Mansfield, while he was sitting on this court, considered whether a trademark infringement action should be stayed pending the Patent and Trademark Office determination of the registrability of the allegedly infringing marks.

> If this case presented intricate technical questions or highly specialized subject matter, the [c]ourt might have reason to defer trial until the Patent Office acts, since the court in such a case would have the benefit of that agency's specialized knowledge, based on its more extensive experience in the area of inquiry....

The issue presented in the present case, however, does not appear to involve such technical questions or subject matter, or require application of such type of expertise.... [Whether a likelihood of confusion exists] will require comparison of the marks and products, proof of the markets in which they are sold, and evidence of any incidents of confusion on the part of purchasers. None of these questions appear to require any major application of highly specialized principles or expertise.

*Tuvache, Inc. v. Emilio Pucci Perfumes International, Inc.*, 263 F.Supp. 104, 105–06 (S.D.N.Y.1967). Like the *Tuvache* case, the issue of whether a likelihood of confusion exists in the case at bar does not involve technical questions or subject matter, or the application of specialized principles or expertise. The court in *Tuvache* also considered two additional factors weighing against a stay of the district court action. The court first considered that:

> [r]egardless which party were to prevail in the pending Patent Office proceedings, ... we may expect further litigation in the federal courts, either by prosecution of the present [trademark infringement] case or by appeal from the Trademark Trial and Appeal Board to a federal district court.... In either event the court would be required to review the same evidence, and make its own determination of the issues.

*Tuvache, supra*, 263 F.Supp. at 106. The court next considered the value of avoiding unnecessary duplication of effort.

> Although the ultimate finding of the tribunals of the Patent Office in proceedings such as these is the right of an applicant to register, nevertheless there must be a finding of the right to use in commerce before that ultimate finding can be made. The Court, in a civil action, will necessarily determine this preliminary question of the right to use, and that determination will form the basis of the ultimate finding of the Office.

*Tuvache, supra*, 263 F.Supp. at 106 (quoting *Squirrel Brand Co. v. Barnard Nut Co.*, 101 U.S.P.Q. 340 (1954)). These factors likewise weigh against staying the district court proceedings in the case at bar.

Analysis of the foregoing factors leads me to conclude that there is a likelihood that an appreciable number of ordinarily prudent purchasers are likely to be confused as to the source of the products in question. Therefore, Cyanamid has satisfied its burden of establishing its irreparable harm and its probable success on the merits, and is entitled to a preliminary injunction and expedited discovery.

Campagna is hereby enjoined from using the MATERNA or MATERNITÁ trademarks during the pendency of this action in connection with the manufacture, sale, offering for sale, promotion, or advertising of any skin care preparations in the United States.

Campagna is further ordered to respond to Cyanamid's Request for Production of Documents and Things on or before December 7, 1987.

SO ORDERED.