**W & G TENNESSEE IMPORTS, INC.**

v.

**ESSELTE PENDAFLEX CORPORATION.**

No. 3-90-0662.

United States District Court,
M.D. Tennessee,
Nashville Division.

Jan. 24, 1991.

R. Jan Jennings, Branstetter, Kilgore, Stranch & Jennings, J. Rush Hicks, Jr., Nashville, Tenn., for plaintiff.

Leo Bearman, Heiskell, Donelson Bearman, Adams, Williams & Kirsch, Memphis, Tenn., Maclin P. Davis, Jr., J. Russell Heldman, Nashville, Tenn., Debra M. Geller, Melvin Garner, Andrew Baum, Darby & Darby P.C., New York City, for defendant.

MEMORANDUM

JOHN T. NIXON, District Judge.

The Court is in receipt of the plaintiff's motion to place this case on the retired docket pending completion of related administrative proceedings, its memorandum in support thereof, and the defendant's memorandum in opposition.

*Facts*

The present controversy arises over the right to sell rectangular retail price labels whose side edges contain a sinuous curve (hereinafter "wavy-edged labels.") The defendant Esselte Pendaflex Corporation ("Esselte") is the owner of United States Trademark Registration No. 1567060 for the wavy-edged labels, and on June 27, 1990 it sent the plaintiff W & G Tennessee

Imports, Inc. ("Tennessee Imports") a letter requesting that it cease and desist its use of the wavy edge labels.

On July 25, 1990 Tennessee Imports brought this action for a declaratory judgment under 28 U.S.C. § 2201, asking the Court to decide the following four questions:

1. Whether the ... rolls of adhesive labels sold by Tennessee Imports are capable of trademark protection by Esselte.

2. Whether the trademark registered by Esselte is wholly and obviously distinguishable from the rolls of adhesive labels sold by Tennessee imports in that the trademark and rolls of labels are so different in texture, function, size, appearance and use that there is no possibility of confusing them in the mind of the public.[1]

3. Whether the trademark registered by Esselte is common and descriptive, rather than original and fanciful and is thereby of limited distinctiveness.

4. Whether the trademark registered by Esselte has no secondary meaning indicating its origin and was in use by Tennessee imports and others through the sale of rolls of labels for many years prior to registration by Esselte and was thereby in the public domain.

In its answer Esselte brought counterclaims against Tennessee Imports for trademark infringement under Section 32(1) of the Lanham Act, for false designation of origin under Section 43(a) of the Lanham Act, for dilution under Section 47–25–512 of the Tennessee state code, and for unfair competition under the common law of the State of Tennessee.

On October 26, 1990 Tennessee Imports filed a petition with the Trademark Trial and Appeal Board (hereinafter "TTAB"), a branch of the United States Patent and Trademark Office, asking the TTAB to cancel Esselte's trademark registration for the wavy edged label. Because the validity of Esselte's trademark is one of the issues which Tennessee Imports asked this Court to decide, Tennessee Imports has now asked this Court to stay all proceedings until the TTAB has made a determination concerning Tennessee Import's petition.

### Conclusions of Law

■ The doctrine of primary jurisdiction states that when a court is faced with a question requiring the exercise of administrative discretion, it should allow the appropriate federal administrative agency to rule on the issue when possible. *See Cavanaugh Communities Corp. v. New York Stock Exchange*, 422 F.Supp. 382, 385–86 (S.D.N.Y.1976). The doctrine is flexible and discretionary, and courts normally examine the facts of each particular case when deciding whether or not it should be applied. *C–Cure Chemical Co., Inc. v. Severe Adhesives Corp.*, 571 F.Supp. 808, 823 (W.D.N.Y.1983) (quoting *United States v. Western Pacific Railway Co.*, 352 U.S. 59, 64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956)).

■ The weight of authority indicates that the doctrine is not normally applied in cases where questions of trademark validity and trademark infringement are involved. *E.g., Goya Foods, Inc. v. Tropicana Products, Inc. v. Tropicana Products, Inc.*, 846 F.2d 848 (2d Cir.1988); *American Cyanamid Co., v. Campagna Per La Farmacie In Italia S.P.A.*, 678 F.Supp. 1049 (S.D.N.Y.1987), *aff'd* 847 F.2d 53 (2d Cir. 1988). Furthermore, deferral to the Patent and Trademark Office in cases where trademark infringement is alleged is unnecessary where the issues do not involve highly technical questions or subject matter. *American Cyanamid*, 678 F.Supp. at 1054–55.

■ The only case offered by the plaintiff in support of its request that this Court stay proceedings is *Sun Drop Sales Corporation of America v. Seminole Flavor Company*, 159 F.Supp. 828 (E.D.Tenn. 1958). *Sun Drop* is distinguishable from the instant case because, although it involved infringement, at the time that the district court granted the stay, both parties

---

**1.** It appears that the buyers of the labels are retail store managers rather than the general public, so a better inquiry would be whether confusion is likely in the minds of retailers.

had made dispositive motions based *solely* on the validity of the trademark at issue. *Sun Drop*, 159 F.Supp. at 828. Since both parties believed that the case could be decided based on the validity or invalidity of the plaintiff's trademark, there was not a prejudicial delay in having the issue decided by the administrative agency rather than the district court. In the instant case, however, the issues of validity and infringement are before the Court simultaneously; if validity were to be decided by the Board and then infringement was to be decided by this Court, the parties would be subjected to the unnecessary expense and delay of two separate proceedings.

*Goya Foods*, supra, the only Circuit Court decision to consider the primary jurisdiction doctrine in relation to a trademark case, involved a scenario more on point. In that case, the issues of validity and infringement were both before the Court at the time the Court was considering whether it should stay proceedings. In deciding not to enter the stay, the Court reasoned:

> If a district court action involves only the issue of whether a mark is entitled to registration and if subject matter jurisdiction is available, the doctrine of primary jurisdiction might well be applicable, despite the differences between the trademark registration scheme and other regulatory patterns. In such a case, the benefits of awaiting a decision would rarely, if ever, be outweighed by the litigants' need for a prompt adjudication. But where, as in the pending case, a district court suit concerns infringement, the interest of prompt adjudication far outweighs the value of having the views of the PTO. Whether a litigant is seeking to halt an alleged infringement or, as in this case, seeking a declaration of non-infringement, it is entitled to have the infringement issue resolved promptly so that it may conduct its business affairs in accordance with the court's determination of its rights. Delaying consideration of Goya's claim pending the outcome of

the TTAB's proceedings undercuts the purpose of declaratory relief by forcing Goya either to abandon use of trademarks it has used for more than a decade, or to 'persist in piling up potential damages.' (citations omitted)

*Goya Foods*, 846 F.2d at 854–55.

■ This Court, along with the TTAB, has concurrent jurisdiction over registration and cancellation of trademarks under 15 U.S.C. § 1119. *See Durox Co. v. Duron Paint Manufacturing Co.*,[2] 320 F.2d 882, 886 (4th Cir.1963). It does not appear that the issues in this case are unusually technical or complex; there is no reason why a district court is not capable of determining whether Esselte's wavy edged labels meet the necessary tests for trademark protection, and if so, whether a likelihood of confusion exists concerning the source of the origin of Tennessee Import's labels. *See Tuvache, Inc. v. Emilio Pucci Perfumes International, Inc.*, 263 F.Supp. 104, 105–06 (S.D.N.Y.1967).

In view of the foregoing, the Court believes it would be wisest to decline to stay proceedings in this Court. Although the Court respects the TTAB's expertise in the area of trademark validity, the benefits of waiting for its ruling would be outweighed by the delay that would occur if this Court refused to act until after the TTAB determined the validity of Esselte's trademark.

If proceedings were stayed, this Court could not begin to determine whether there is infringement until after the TTAB had completed its proceedings. According to Tennessee Import's own complaint, it requested a declaratory judgment in order to determine whether its ongoing business operations were in violation of the law. Complaint, paragraph 4. Furthermore, Esselte has alleged that Tennessee Import's use of the wavy-edged labels is diluting the value of its trademark, and thereby causing it irreparable harm. *See* Counterclaim, paragraphs 22, 26, 30 and 34. Therefore, it appears to the Court that it would be un-

---

**2.** Esselte asserts twice that *Durox*, a Fourth Circuit case, is controlling in this Court. Defendant's Memorandum in Opposition, at 6. Although the Court has elected to follow the *Durox* holding, it should be clarified that as a Fourth Circuit decision, the holding is not binding authority for district courts sitting within this Circuit. See 28 U.S.C. § 41.

fair to both parties to delay a final determination as to whether Tennessee Import's use of the wavy edge labels infringes Esselte's trademark.

For the foregoing reasons, the plaintiff's motion to place this case on the retired docket pending completion of administrative proceedings is DENIED.

The defendant has requested in its counterclaim that the Court issue a preliminary injunction prohibiting the plaintiff from promoting or selling wavy edged labels during the pendency of this litigation. Accordingly, the parties are ORDERED to submit briefs on whether a preliminary injunction is appropriate within ten days of the entry of this memorandum and order.