**BANKAMERICA CORPORATION (formerly NationsBank Corporation), Plaintiff,**

v.

**NATION'S BANKERS MORTGAGE, INC., Defendant.**

**No. CIV. A. H–98–1404.**

United States District Court,
S.D. Texas,
Houston Division.

July 14, 1999.

Paul L. DeVerter, II, Fulbright & Jaworski, Houston, TX, Larry Currell Jones, Leigh M. Levine, Alston & Bird, Charlotte, NC, for Plaintiff.

Patricia Hair, Womble & Cotellesse, Houston, TX, for Defendant.

**ORDER AND MEMORANDUM**

RAINEY, District Judge.

Pending before the Court is the motion for partial summary judgment (Dkt.# 37) filed by Plaintiff BankAmerica Corporation, formerly known as NationsBank Corporation.[1] BankAmerica seeks summary judgment on its service mark infringement, unfair competition and Texas anti-dilution claims against Defendant Nation's Bankers Mortgage, Inc. ("NB Mortgage"). After reviewing the motion, the response, the record, and the applicable law, the Court is of the opinion that BankAmerica's motion for partial summary judgment should be GRANTED.

**Factual and Procedural Background**

The original plaintiff in this action, NationsBank Corporation, was incorporated in North Carolina in 1968. The corporation's

---

1. In this order, the Court will refer to the plaintiff as either "NationsBank" or "BankAmerica," depending on the context of the reference.

name was changed from NCNB Corporation to NationsBank Corporation in late 1991. On September 30, 1998, NationsBank merged with another entity to form BankAmerica Corporation, a Delaware corporation. BankAmerica now owns numerous service marks formerly belonging to NationsBank which include the term NATIONS, many of which are the subject of service mark registrations issued by the United States Patent and Trademark Office. Examples of these trade names include "Nations Fund," "NationsRealty" "NationsLink," and "NationsBanc Mortgage Corporation." Through its subsidiaries, BankAmerica currently provides a wide range of banking and financial services in Texas and elsewhere, and in April 1999 began doing business under the name "Bank of America."

The record is silent on whether or to what extent BankAmerica continues to use the name "NationsBank" or any "Nations" mark in the Houston area or elsewhere. BankAmerica submits affidavit evidence that shows only that certain non-bank subsidiaries of BankAmerica, such as NationsBanc Mortgage Corporation and NationsCredit Consumer Corporation, "remain authorized to conduct business in various states," and that NationsBanc Commercial Corporation, NationsBanc Dealer Leasing, Inc., NationsBanc Investments, Inc., NationsBanc Montgomery Securities, LLC and NationsCredit Manufactured Housing Corporation "remain authorized to do business in Texas."

Defendant Nation's Bankers Mortgage, Inc. ("NB Mortgage") is a small Houston-based mortgage company that was incorporated in Texas in September 1991 and has been doing business in the Houston area as Nation's Banker's Mortgage since that time. NB Mortgage specializes in residential mortgages and mortgage brokerage services, and it targets low-income residential purchasers. At the time NB Mortgage incorporated and began business, NationsBank was still doing business as NCNB in the Houston area. The president of NB Mortgage, Alfred Robins, testified in his deposition that he chose the name "Nation's Bankers" for his business by making a list of "all the possible names I could think of," then eliminated many of the names for various reasons, finally ending up with the name "Nation's Bankers."

NationsBank, now BankAmerica, filed this lawsuit against NB Mortgage on May 7, 1998, claiming that NB Mortgage, by using the trade name "Nation's Bankers," (1) is infringing BankAmerica's federally registered service mark in violation of 15 U.S.C. § 1114; (2) has engaged in unfair competition and false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a); (3) has violated the Federal Trademark Dilution Act of 1995, 15 U.S.C. § 1125(c); (4) has infringed BankAmerica's common law trademark rights; (5) has engaged in unfair competition in violation of Texas common law; and (6) has violated the Texas anti-dilution statute, TEX. BUS. & COM. CODE § 16.29.

BankAmerica now seeks partial summary judgment on its claim of 15 U.S.C. § 1114 infringement of federally registered service marks; its 15 U.S.C. § 1125(a) claim of unfair competition and unfair designation of origin; and its claim under the Texas Anti–Dilution Statute (Counts 1, 2, and 6 above). BankAmerica states that if the Court grants summary judgment in its favor with respect to any of the three claims above, it "will withdraw its remaining causes of action for the purpose of proceeding to trial on Defendant's affirmative defenses." In an order entered February 18, 1999, the Court denied BankAmerica's motion for summary judgment on NB Mortgage's affirmative defenses of laches and acquiescence, finding genuine issues of material fact on several questions relevant to one or both of the defenses—for example, whether and when NationsBank knew or should have known about NB Mortgage, whether any delay by NationsBank in enforcing its trade name was unreasonable, whether NationsBank engaged in conduct that implicitly conveyed consent to NB Mortgage's name,

and whether NB Mortgage was prejudiced by NationsBank's actions.

The relevant sequence of events in this case is set out below:

| | |
|---|---|
| January 10, 1990 | NCNB Corporation filed its initial application for federal registration of the mark NATIONSBANK "for banking and related financial services." |
| August 27, 1990 | NCNB changed the name of one of its subsidiaries to NationsBank National Association, thus using the name NationsBank in commerce for the first time. This use apparently did not occur in Texas. |
| September 1991 | NB Mortgage incorporated in Texas and began doing business in the Houston area, using the name "Nation's Banker's Mortgage" on its stationary, loan documents, telephone directory listing and product handouts. At this time, the name "NationsBank" was not being used by NCNB in the Houston area. |
| October 18, 1991 | The State of Texas issued a registration to NCNB for use of the mark NATIONSBANK in conjunction with banking services. |
| "late 1991" | NCNB officially changed its corporate name to NationsBank Corporation. |
| May 19, 1992 | A service mark registration was issued to NationsBank by the U.S. Patent & Trademark Office for the name NATIONSBANK for "banking and related financial services." The registration document states that the "first use" of the name occurred in September 1990. |
| Periodically from 1992 to 1997 | NB Mortgage president Alfred Robins spoke at numerous VA and HUD seminars at which NationsBank loan officers were present, and NationsBank occasionally referred business to NB Mortgage, sending it lower-income borrowers who did not meet NationsBank lending criteria. |
| December 27, 1994 | A service mark registration was issued to NationsBank by the U.S. Patent & Trademark Office for the name NATIONS CREDIT for, *inter alia,* "residential mortgages." |
| "mid–1996" | NB Mortgage began radio advertising in Houston. |
| August 20, 1996 | A service mark registration was issued to NationsBank by the U.S. Patent & Trademark Office for the name NATIONSBANK EQUITY BUILDER MORTGAGE for "banking and related financial mortgage services." |
| Sometime before June 1997 | A telephone information operator mistakenly gave out NB Mortgage's telephone number to an undetermined number of long distance customers who were trying to reach NationsBank Corp. NB Mortgage asserts that "the situation was reported immediately to NationsBank" and that NB Mortgage attempted to refer all the misdirected calls to NationsBank. |
| October 1997 | Kathryn Kohler, assistant general counsel of NationsBank, avers that on this date she personally learned of the existence of Nation's Banker's Mortgage. The record indicates that a NB Mortgage advertisement was brought to Kohler's attention. Kohler avers that she "promptly" had outside counsel contact NB Mortgage and request that it cease use of the name. |
| 1998 | NB Mortgage began trade journal and newspaper advertising in Houston. |
| May 7, 1998 | The instant lawsuit is filed. |
| September 29, 1998 | NationsBank files a motion for a preliminary injunction. |
| September 30, 1998 | NationsBank merges with another entity to create the current plaintiff, BankAmerica Corporation, a Delaware corporation. |
| February 18, 1999 | The Court denies BankAmerica's motion for preliminary injunction. |
| April 1999 | BankAmerica begins doing business in Houston and elsewhere under the name "Bank of America." |

### Summary Judgment Standard

Rule 56 mandates the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc) (per curiam). When considering a motion for summary judgment, the court must view the facts in the light most favorable to the non-movant and draw all reasonable inferences in favor of the non-movant. *See Samuel v. Holmes*, 138 F.3d 173, 176 (5th Cir.1998); *Texas v. Thompson*, 70 F.3d 390, 392 (5th Cir.1995). A genuine dispute over a material fact, one capable of affecting the outcome under existing law, will preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### Discussion

■ Section 32 of the Lanham Act, 15 U.S.C. § 1114, provides that "Any person who shall, without the consent of the registrant,"

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,

shall be liable in a civil action by the registrant for the remedies hereinafter provided.

15 U.S.C. § 1114. Thus, to prevail on its trademark infringement claim, BankAmerica has to show that the defendant's use of the name "Nation's Bankers Mortgage, Inc." creates a likelihood of confusion in the minds of potential consumers as to the source, affiliation or sponsorship of the services provided by Nation's Bankers Mortgage. *See Elvis Presley Ent., Inc. v. Capece*, 141 F.3d 188, 193 (5th Cir.1998). "Likelihood of confusion is synonymous with a probability of confusion, which is more than a mere possibility of confusion." *Id.*

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides that:

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a). The Fifth Circuit has held that the basic test for every type of "unfair competition," including trademark infringement, is the "likelihood of confusion" test. *See Chevron Chemical Co. v. Voluntary Purchasing Groups, Inc.*, 659 F.2d 695, 703 (5th Cir.1981), *cert. denied*, 457 U.S. 1126, 102 S.Ct. 2947, 73 L.Ed.2d

1342 (1982). Thus, if any appreciable number of ordinary prudent members of the public are likely to be confused, mistaken or deceived into believing that the defendant's "Nation's Bankers Mortgage" services are somehow sponsored or approved by NationsBank (now BankAmerica), then sections 32 and 43(a) of the Lanham Act are violated. *See Durox Co. v. Duron Paint Mfg. Co.,* 320 F.2d 882, 884 (4th Cir.1963).

■ In determining whether a likelihood of confusion exists, the Fifth Circuit considers the following non-exhaustive list of factors: (1) the type of trademark allegedly infringed, (2) the similarity between the two marks, (3) the similarity of the products or services, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, and (7) any evidence of actual confusion. *See Elvis Presley Enterprises,* 141 F.3d at 194. "No one factor is dispositive, and a finding of a likelihood of confusion does not even require a positive finding on a majority of these 'digits of confusion.' " *Id.*

■ NB Mortgage argues that summary judgment should be denied because "[i]mportant fact issues will now include the effect that BankAmerica's cessation of the use of the name 'NationsBank' has upon its entitlement to injunctive relief." However, NB Mortgage has not pleaded or proved abandonment of the "Nations-Bank" service mark by BankAmerica. Until abandonment is proven, BankAmerica has rights to the name "NationsBank" and may seek to prevent other parties from using that name. *See, e.g., Exxon Corp. v. Humble Exploration Co.,* 592 F.Supp. 1226, 1230–31 (N.D.Tex.1984) (district court found that although Exxon had ceased using the trade name "Humble," it had not abandoned the name because it "contemplated some future use" of the Humble name; court therefore found that Exxon was entitled to an injunction forbidding another company from using the Humble name); *see also Indianapolis Colts v. Metropolitan Baltimore Football Club,* 34 F.3d 410, 413 (7th Cir.1994) (finding that even though the name "Baltimore Colts" was abandoned when NFL football team moved to Indianapolis, the new Canadian Football League team located in Baltimore could be enjoined from using the name "Colts" because of the possibility of confusion that would result). Even when a mark owner ceases to use that mark, subsequent use of the mark by another party "may well evoke a continuing association with the prior use," resulting in confusion among potential consumers. *See Indianapolis Colts,* 34 F.3d at 413.

■ After reviewing the undisputed evidence in the summary judgment record, the Court concludes that (1) the mark "NationsBank" is a relatively strong mark due to its extensive nationwide use and promotion since 1991, resulting in a connection in the public's mind between the mark and the services provided by NationsBank, now BankAmerica; (2) the names "NationsBank" and "Nation's Bankers" are strikingly similar; (3) the services provided by the plaintiff and the defendant, mortgage brokerage and lending, are similar such that members of the public might believe that NB Mortgage's services are connected to those of the former NationsBank; (4) both plaintiff and defendant provide mortgage services to the public through offices in Houston; (5) both plaintiff and defendant promote their services through radio and newspaper advertising; and (6) there have been some instances of actual confusion, in which customers seeking NationsBank called Nation's Bankers instead.

From these factors, the Court concludes as a matter of law from the undisputed evidence that an appreciable number of ordinary prudent members of the public are likely to be confused, mistaken or deceived into believing that the defendant's "Nation's Bankers Mortgage" services are somehow sponsored or approved by NationsBank (now BankAmerica). Because a likelihood of confusion exists, summary judgment is GRANTED in favor of BankAmerica on its claims of federal trade-

mark infringement under 15 U.S.C. § 1114 and unfair competition and unfair designation of origin under 15 U.S.C. § 1125(a), subject to NB Mortgage's proof on its affirmative defenses at trial.

■ BankAmerica also moves for partial summary judgment on its Texas anti-dilution claim. The Texas Anti–Dilution Statute provides that:

A person may bring an action to enjoin an act likely to injure a business reputation or to dilute the distinctive quality of a mark registered under this chapter or Title 15, U.S.C., or a mark or trade name valid at common law, regardless of whether there is competition between the parties or confusion as to the source of goods or services. An injunction sought under this section shall be obtained pursuant to Rule 680 et seq. of the Texas Rules of Civil Procedure.

TEX. BUS. & COM. CODE § 16.29. From the undisputed evidence, the Court concludes that the service mark "Nations-Bank" has achieved a "distinctive quality" due to its extensive nationwide use and promotion since 1991, resulting in a connection in the public's mind between the mark and the services provided by NationsBank, now BankAmerica. Therefore, the NationsBank mark is entitled to protection from dilution under TEX. BUS. & COM. CODE § 16.29.

BankAmerica contends that defendant's use of the name "Nation's Bankers" will dilute the distinctive quality of the NationsBank mark. "Dilution by blurring" is "the gradual diminution or whittling away of the value of the famous [or distinctive] mark by blurring uses by others." 3 J. McCarthy, TRADEMARKS AND UNFAIR COMPETITION, § 24:94 (4th ed.1998). The issue raised by such a claim is "whether allowing many others like this defendant to continue will have the effect of lessening the ability and capacity of the famous mark to remain strong." *Id.*

The Court concludes that the renown enjoyed by the NationsBank mark, the similarity between "NationsBank" and "Nation's Bankers," and the similarity of the services provided by the parties, all lead to the conclusion that MB Mortgage's continued use of the name "Nation's Bankers" will dilute the distinctive quality of the "NationsBank" mark. NB Mortgage has not pleaded or proven that BankAmerica has abandoned the mark "Nations-Bank," which still carries a significant amount of goodwill and remains associated with the services provided by BankAmerica. Accordingly, summary judgment is GRANTED in favor of BankAmerica on its claim under the Texas Anti–Dilution Statute, subject to NB Mortgage's proof on its affirmative defenses at trial.

### Conclusion

For the reasons stated in this order, Plaintiff BankAmerica's motion for partial summary judgment (Dkt.# 37) is GRANTED. BankAmerica has agreed to withdraw its claims under the Federal Trademark Dilution Act of 1995; its common-law trademark infringement claims; and its Texas common law unfair competition claims. Accordingly, those three claims are DISMISSED with prejudice. The case will proceed to trial on NB Mortgage's affirmative defenses of laches and acquiescence.